Linda Rae COX, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00118–CR.

Court of Appeals of Texas,
El Paso.

Dec. 16, 1992.

John B. Holmes, Dist. Atty. of Harris County, Houston, for State/appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

OPINION

BARAJAS, Justice.

This is an appeal from a judgment of conviction for the offense of conspiracy to commit capital murder. Trial was by jury. Upon a finding of guilty, the jury assessed punishment at 12 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In six points of error, Appellant seeks review of the trial court's denial of a pretrial hearing, the court's admission and exclusion of certain evidence, the court's denial of a requested jury instruction and the prosecutor's punishment phase argument. We affirm the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE

In a complex set of facts, a group of inmates who were originally incarcerated in the Harris County Jail and later in the Institutional Division of the Texas Department of Criminal Justice conspired to kill several witnesses to an unresolved charge of robbery which was then pending against an inmate incarcerated in the State of Arkansas. One inmate, privy to the scheme, elected to become a government operative and assisted Texas Rangers in conducting an investigation. The investigation culminated in the arrest of Appellant and her husband, both of whom were correctional officers with the Institutional Division of the Texas Department of Criminal Justice. Appellant's husband had previously accepted an offer to carry out the scheduled "hits." The above arrests were made immediately after Appellant's husband accepted, in Appellant's presence, a partial payment for the "hits." Payment was made by a Texas Ranger who posed as a middleman for the above transaction.

David Cunningham, Houston, for appellant.

## II. DISCUSSION

In Point of Error No. One, Appellant challenges the trial court's denial of a requested pretrial hearing to determine the existence of a conspiracy for the purpose of further determining the admissibility of certain incriminating statements pursuant to Tex.R.Crim.Evid. 801(e)(2)(E). In substance, Appellant's motion constituted a motion to suppress the evidence in the absence of facts establishing the existence of a conspiracy pursuant to Tex.Code Crim. Pro.Ann. art. 28.01 (Vernon 1989). Citing Tex.R.Crim.Evid. 104, the Court of Criminal Appeals has held that determinations of the admissibility of statements specifically excluded from the hearsay rules as "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy"[1] are to be made by the trial court alone. *Casillas v. State*, 733 S.W.2d 158, 168 (Tex.Crim.App.1986), *appeal dism'd*, 484 U.S. 918, 108 S.Ct. 277, 98 L.Ed.2d 238 (1987). The Court has not, however, mandated that a trial court must, as a matter of course, make such a determination prior to trial on the merits. Therefore, Appellant's reliance on *Casillas* for the proposition that the trial court erred in denying a hearing on his pretrial motion to suppress is misplaced.

To the contrary, the decision of whether or not to conduct a pretrial hearing on a motion to suppress rests within the sound discretion of the trial court. Such discretion permits trial courts, upon proper objection, to elect to determine the admissibility of the challenged evidence during the trial on the merits. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App. 1988). Appellant does not contend that the trial court wholly failed to ascertain whether or not the statements were made during the course or in furtherance of a conspiracy. Rather, Appellant maintains, without citation to authority, that the trial court erred in failing to make such inquiry prior to trial.[2] The holding in *Casillas* exclusively dealt with the distinction between the functions of the trial court and jury and required that the trial court alone make a "preliminary" determination of admissibility pursuant to Tex.R.Crim.Evid. 104. 733 S.W.2d at 168. The word "preliminary" does not specify at what point in the proceedings the decision as to admissibility is to be made. In that regard, we find that the trial court did not abuse its discretion in failing to conduct a pretrial hearing to determine the existence of a conspiracy for the purpose of further determining the admissibility of certain incriminating statements pursuant to Tex.R.Crim.Evid. 801(e)(2)(E).[3] Accordingly, Appellant's Point of Error No. One is overruled.

In her second point of error, Appellant argues the trial court erred in admitting statements not made in the course and in furtherance of the conspiracy for which she was convicted. Appellant asserts any statements made in the Harris County Jail constituted a failed or abandoned conspiracy to which she was not a party. Thus, she contends those statements were inadmissible. We disagree.

The specific statements challenged by Appellant were offered in the testimony of Donald Daniels. The record shows that Donald Daniels was committed to the Harris County Jail awaiting transfer to the Institutional Division of the Texas Department of Criminal Justice for revocation of his parole. While in jail, Daniels shared a cell with Clayton Phillips who was incarcerated on concurrent federal and state sentences imposed as a result of a multi-state

---

1. Tex.R.Crim.Evid. 801(e)(2)(E).

2. Appellant's argument under this point becomes multifarious in its assertions regarding the evidence upon which a decision of admissibility of a coconspirator's statements is to be made. Also, Appellant's complete failure to elaborate as to which statements were allegedly inadmissible makes any review of the issue impossible.

3. We note that the United States Court of Appeals for the Fifth Circuit has held the trial court need not make a determination regarding compliance with the rules of evidence prior to admission (much less prior to trial) of a coconspirator's statement subject to the prosecution's subsequent establishment of the necessary foundation. *United States v. Rocha*, 916 F.2d 219, 239 (5th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

crime spree. The record further shows Phillips had entered into plea agreements with the various jurisdictions in which he had allegedly committed criminal offenses, except for the State of Arkansas. Arkansas was unwilling to accede to the above concurrent sentence arrangement as a method of disposing of the robbery charge pending in Arkansas. As a result of this position, Phillips expressed to Daniels and others in the Harris County Jail, a desire to kill the witnesses to his Arkansas robbery. The record also shows that Daniels convinced Phillips to disregard all offers made by other prisoners at the Harris County Jail and await further action on his plan to have witnesses killed until a later time.

The record establishes that after Daniels was transferred to a Texas prison unit, he regained his contact with Phillips via a series of letters and phone calls, each of which served to further the scheme to kill witnesses in the State of Arkansas. It was during this time period that Daniels contacted the warden of his prison unit who in turn contacted the Texas Rangers. The record further shows that the Texas Rangers conducted an investigation establishing involvement by Appellant as well as her husband. Appellant's husband was ultimately arrested after receiving a partial payment prior to the scheduled "hits." The specific statements admitted in evidence giving rise to Appellant's second point of error are those that occurred while Daniels and Phillips shared a cell in the Harris County Jail just prior to Daniels' transfer to the Texas prison unit.

The trial court is provided wide discretion in liberally construing the rules of evidence to determine the admissibility of evidence. *Hernandez v. State*, 825 S.W.2d 765, 769 (Tex.App.—El Paso 1992, no pet.); *Egger v. State*, 817 S.W.2d 183, 185 (Tex. App.—El Paso 1991, pet. ref'd). To prevail, Appellant must demonstrate that the court clearly abused its discretion in that the trial court's decision is outside the zone of reasonable disagreement. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (on own motion for rehearing). Whether or not the trial court's decision was outside the zone of reasonable disagreement requires this Court to determine if the statements were made "during the course and in furtherance of the conspiracy." Tex.R.Crim.Evid. 801(e)(2)(E). In that regard, the central issue is whether the continuing course of conduct served the ultimate objective fostered by the conspiracy as a whole. *See Callaway v. State*, 818 S.W.2d 816, 831–32 (Tex.App.—Amarillo 1991, pet. ref'd).

Appellant contends that conversations at the Harris County Jail amounted to a separate conspiracy which was abandoned once Daniels convinced Phillips to disregard all offers made by other prisoners at the Harris County Jail and that he await further action on his plan to have witnesses killed until a later time. Despite this contention, the record reveals that Appellant admitted to the trial court that the objective of the "two conspiracies" were identical. Nonetheless, Appellant argues that Phillips' decision to wait resulted in the termination of the "first" conspiracy, and that the influx of new "players" constituted a new or "second" conspiracy. Since the goal of having witnesses in Arkansas killed was not achieved at the time Phillips decided to wait and since the identical objective was fostered after Daniels was transferred to prison, we conclude, as did the trial court, that there was but one conspiracy. Consequently, the above statements are admissible in evidence.

■ In finding the existence of a single conspiracy, the most important factor is whether the conspirators shared a common goal or objective. *United States v. Tarantino*, 846 F.2d 1384, 1393 (D.C.Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). A single conspiracy does not become many individual conspiracies simply because the members of the conspiracy change throughout its entire course. *United States v. Meester*, 762 F.2d 867, 880 (11th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). The entire course of a conspiracy includes each declaration or act of any co-conspirator until the ultimate object of the conspiracy has been completed. *Callaway*, 818

S.W.2d at 831. The object of the conspiracy is complete "only after every act subsequent to the commission of the offense within the plan and breadth of the conspiracy has been performed," and it is at that time the conspiracy terminates. *Callaway,* 818 S.W.2d at 831.

In the instant case, the clear objective behind all conversations between inmates at the Harris County Jail was the planned execution of the out-of-state witnesses. The interruption of the initial plans to locate a hit man within the confines of the Harris County Jail did absolutely nothing to alter the resolve of Phillips to complete that objective. *Rodriquez v. State,* 552 S.W.2d 451, 454 (Tex.Crim.App.1977). *See also Rocha,* 916 F.2d at 240. Conversations at the Harris County Jail to kill out-of-state witnesses served as the foundation of the conspiracy and were clearly in furtherance of the ultimate goal. Accordingly, we find that the trial court's decision to admit the above statements was not outside the zone of reasonable disagreement. Appellant's Point of Error No. Two is overruled.

 In Point of Error No. Three, Appellant alleges the trial court abused its discretion in excluding the testimony of Dr. Toby Myers, Ph.D., an expert in the field of domestic violence, regarding the "battered spouse syndrome."

The record shows that subsequent to Appellant testifying on her own behalf, she planned to call Dr. Myers to refute the State's allegation that Appellant unlawfully agreed to commit capital murder. Appellant claims this testimony would have explained why she was present with her husband when the two met with the undercover Texas Ranger immediately prior to her arrest. Moreover, Appellant suggests that the proposed testimony would have shown that she was compelled to go along with her husband due to his past history of domestic violence when she disagreed with him or confronted him, and more important, would have shown why she could not

avoid or leave the abusive relationship. *See generally, Fielder v. State,* 756 S.W.2d 309 (Tex.Crim.App.1988) (reasons for admissibility of such evidence in presentation of statutory defense of justification to murder prosecution). In support of her position, Appellant cites *Duckett v. State,* 797 S.W.2d 906 (Tex.Crim.App.1990), for the proposition that evidence of battered spouse syndrome is admissible as scientific evidence if such evidence will provide specialized information to assist the trier of fact in determining an issue of consequence pursuant to Tex.R.Crim.Evid. 702. While we agree with the general proposition that a defendant may be entitled to present scientific evidence to either prove a statutory defense or to simply discredit the State's case, we find that the facts established by Appellant's own testimony preclude discussion of the applicability of the battered spouse syndrome to the instant case. Moreover, regardless of the purpose for which Appellant sought to introduce evidence of the battered spouse syndrome, the record firmly establishes facts from which the trial judge properly exercised his discretion in excluding the evidence as the evidence was not admissible under the general rules of relevancy.[4] *See* Tex.R.Crim. Evid. 401.

Evidence is relevant if it possesses "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* Appellant testified she was not dependent upon her husband financially. Further, Appellant testified that although her husband was physically abusive toward her and as a result she was "always frightened of him," she was able to control his violent tendencies. While acknowledging she was embarrassed to report the violence, Appellant testified that her husband's physical violence toward her ended once she threatened to call the local sheriff's department. The record additionally shows that once Appellant's husband ceased his physical vi-

---

**4.** A trial judge's decision to admit or exclude evidence will be upheld on any theory applicable to the case even if the judge gave a wrong reason for his decision. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

olence toward her, he redirected his aggression to causing damage to the couple's house. Appellant stated that in order to put a stop to this later conduct, she forced her husband to move out of the home, although approximately a week later, the couple reconciled. The record further establishes that when Appellant's husband later asked her to go along with him to Houston to listen to a proposal for an extra-job (to talk with the undercover Ranger regarding the proposed "hits"), she stated "I was not in any immediate danger. I figured I could take care of the situation once I got away from there, you know." Further, Appellant stated emphatically on cross-examination that her husband could not have forced her to participate in the murders. Accordingly, Appellant's testimony establishes she was able to exert herself and could control her husband's actions to some extent when she deemed it necessary.

After the trial court excluded the expert testimony, Appellant procured a bill of exceptions regarding the expert's proposed testimony. Dr. Myers noted that battered spouse syndrome is characterized by two components: (1) physical violence; and (2) psychological oppression. As to this second component, Dr. Myers testified that the victim of spousal abuse is often humiliated, degraded, shamed and is "rendered more or less powerless." Dr. Myers, in evaluating the relationship between Appellant and her husband, acknowledged that Appellant was a battered spouse, but that her case was of either a mild or moderate nature. Dr. Myers further testified as to a number of reasons why a battered spouse would continue to endure an abusive relationship; such reasons, among others, include the battered spouse's fear of, and financial dependency on, the abuser. After the conclusion of Appellant's bill of exception, Appellant reurged her objections; however, the trial court stood by its prior ruling.

■ Though we need not question nor validate the criteria fostered by Dr. Myers to establish the existence of battered spouse syndrome as a bright-line test applicable to situations where domestic violence has touched the lives of defendants, it nonetheless was the criteria advanced for consideration by the trial court in the instant case.[5] As such, the above two components and their constituent parts provided the basis upon which the trial court was to determine the relevancy of battered spouse syndrome, given facts already in evidence. As a general rule, prior to the admission of evidence, such evidence must be, upon proper objection, found to be relevant as defined above. This determination of relevance requires a preliminary showing by the proponent that the evidence tends to make the existence of a consequential fact more or less probable. *Hernandez*, 825 S.W.2d at 769. As noted in *Fielder*, expert evidence in this realm serves to establish why a battered spouse would continue to endure the abuse and why the battered spouse would conceal such abuse. 756 S.W.2d at 316. Additionally, expert testimony on battered spouse syndrome is also generally considered specialized information that could "appreciably aid" the trier of fact. *Id.* at 321. This conclusion does not, however, establish a per se rule of admissibility of such expert testimony in any case in which the evidence raises the issue. Even if a qualified expert offers to give scientific testimony which would assist the jury in determining a fact in issue, the trial judge does not abuse his or her discretion in excluding the evidence if it otherwise fails to pass accepted tests for admissibility. *See Duckett*, 797 S.W.2d at 913–14, 917.

Appellant's testimony illustrated she could, when she chose to do so, exert sufficient control over the abusive situation, and that she was not "rendered more or less powerless." The record is wholly devoid of evidence to indicate that either physical violence or property damage continued after Appellant's husband returned to the

---

**5.** Since expert testimony may take many forms which may or may not be appropriate in different circumstances, there can be no general bright-line application of the rules. *Duckett*, 797 S.W.2d at 914.

couple's residence, other than Appellant's general assertion that her husband "might" get violent if he became irritated. Furthermore, Appellant conceded that both she and her husband agreed to make some changes to their relationship in order to give their attempted reconciliation a chance. In that regard, Appellant firmly stated that her husband did act better and in fact did change his ways. Most compelling and central to the issue, however, is Appellant's testimony she did not, at the time of the Houston trip, feel that she was in any immediate danger and that she could straighten everything out later. Thus, these facts are clearly distinguishable from those established by the accused in *Fielder* who testified the deceased had threatened her life repeatedly and she feared he planned to carry out the threat when he brandished a pistol which she took away from him and then used to kill the abuser. 756 S.W.2d at 312. No such facts exist in the instant case from which the trial judge could find relevance.

■ Application of the basic rules of relevance pursuant to Rule 702 is analogous to the Court of Criminal Appeals' analysis of the appropriate review of a trial court's determination of relevance in regard to Rule 404(b) in *Montgomery*, 810 S.W.2d at 390–91.[6] Our adversarial system correctly assumes the trial judge is best situated to decide whether evidence is "relevant." *Montgomery*, 810 S.W.2d at 391. The trial judge must rely upon his observations and experiences of the world in order to reason whether or not the proffered evidence tends to make the existence of a consequential fact more or less probable. *Montgomery*, 810 S.W.2d at 391. Although we acknowledge that reasonable men and women, as well as their experiences, will differ, a trial judge's decision whether or not evidence is relevant will not be overturned unless this Court, on review, can say with confidence that the trial court's ruling is outside the zone of reasonable disagreement. *Id.* In the instant case, in applying the standard advanced by

Appellant's own expert, we are unable to conclude that the determination by the trial court that Appellant was not rendered more or less powerless by her husband's abuse was outside this zone of reasonable disagreement. Thus, given the state of the record, the evidence sought to be admitted would not tend to make a consequential fact more or less probable, and thus was irrelevant and inadmissible. We overrule Point of Error No. Three.

■ In her fourth point of error, Appellant challenges the trial court's exclusion of part of Diane Viera's testimony which she sought to admit under Tex.R.Crim. Evid. 801(e)(1)(B). Specifically, Appellant sought admission of Viera's testimony to rebut the State's charge that Appellant recently fabricated allegations of spousal abuse.

The record establishes that Diane Viera, a friend of Appellant, testified about Appellant's complaints of her husband's abuse. When the witness began to testify regarding Appellant's outcry as to alleged verbal threats made by Appellant's husband, the State objected that the testimony would amount to back-door hearsay. The State's objection was sustained. The trial court instructed counsel that he would permit testimony as to what Appellant told the witness her husband had done but would not permit testimony as to what Appellant told the witness her husband stated he would do in the future. On appeal, Appellant complains about the trial court's ruling excluding the testimony as to Appellant's outcry about her husband's statements to her repeatedly threatening to kill Appellant.

Rules of evidence require that any out-of-court statement be independently admissible as either non-hearsay or as an exception to the rules prohibiting the admission of hearsay. *See generally*, Tex.R.Crim. Evid. 802 and 805. Therefore, the witness's proposed testimony regarding Appellant's husband's statements must be admis-

---

**6.** The Court of Criminal Appeals has similarly compared Montgomery to the admissibility of scientific evidence albeit in the consideration of the probative value versus prejudicial effect balancing test pursuant to Rule 403. *Duckett,* 797 S.W.2d at 914.

sible on its own merit. *Citing Campbell v. State*, 718 S.W.2d 712 (Tex.Crim.App.1986), Appellant merely asserts that the testimony was admissible to rebut the State's either express or implied charge that Appellant had only recently fabricated her allegations of spousal abuse. We disagree. In the instant case, in order to rehabilitate Appellant's testimony regarding any abuse she allegedly suffered, such testimony regarding statements made by Appellant's husband must be independently admissible.[7] Tex.R.Crim.Evid. 801(e)(1)(B). *See generally, Crane v. State*, 786 S.W.2d 338, 354 (Tex.Crim.App.1990) (hearsay statements not shown to be within a recognized exception are inadmissible); H. Wendorf, D. Schleuter, & R. Barton, Texas Rules of Evidence Manual, art. VIII., at 117 (3rd ed. 1991).

We have carefully viewed the record in the instant case and find that Appellant, in her testimony, wholly failed to make mention of any threats by her husband to kill her. Consequently, the State did not cross-examine Appellant in regard to any such assertions. As a result, the excluded testimony fails to qualify as a non-hearsay statement which is consistent with the declarant's (Appellant's) testimony, if any, which may be offered to rebut a charge of recent fabrication. Accordingly, we find that the trial court did not err in excluding the proffered testimony on this ground, and we overrule Point of Error No. Four.

In Point of Error No. Five, Appellant argues the court erred in failing to submit her requested jury instruction concerning "mere presence" in the charge, rather than the general instruction on "mere presence," as it relates to parties, which was submitted in the charge.[8] During the charge conference, Appellant requested the following "mere presence" instruction be submitted:

Mere presence at the scene of an alleged transaction or event or mere similarity in conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy but who happens to act in a way which advances some object or purpose of the conspiracy does not thereby become a conspirator.

The trial court refused to give the above jury instruction. On review, Appellant contends the trial court erred in denying submission of the above charge, and further invites this Court to adopt the above requested charge, purportedly approved by the Fifth Circuit Court of Appeals, as an appropriate charge to be submitted in conspiracy cases in this jurisdiction. We decline the invitation.

Appellant's argument is centered upon her defensive theory that the requisite intent to commit the conspiracy was absent from the instant case because there was allegedly no joint objective shared between Appellant and her husband. Although Appellant is correct in stating that she was entitled to an instruction on any defense raised by even the feeblest of evidence, a trial court's "denial of a defendant's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case." *Green v. State*, 566 S.W.2d 578, 584 (Tex.Crim.App.1978). *See also Garza v. State*, 829 S.W.2d 291, 294 (Tex. App.—Dallas 1992, pet. ref'd). Appellant's argument urging the absence of the requisite intent essentially amounts to an alternative theory as to the cumulative effect of the evidence presented by eliminating an essential element of the State's case. *See Mayfield v. State*, 716 S.W.2d 509, 517 (Tex.Crim.App.1986) (Teague, J., concur-

---

7. *See generally, Moody v. State*, 827 S.W.2d 875, 893–94 (Tex.Crim.App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); *Haughton v. State*, 805 S.W.2d 405, 408 (Tex. Crim.App.1990); *Ramos v. State*, 831 S.W.2d 10, 14 (Tex.App.—El Paso 1992, pet. ref'd).

8. We note that Appellant was not charged as a party to the offense in the application paragraph of the jury charge.

ring). Hence, Appellant was not entitled to the requested instruction.[9] For the foregoing reasons, we overrule Point of Error No. Five.

 In her last point of error, Appellant asserts error in the trial court's overruling of her objection to the State's argument during punishment. Specifically, Appellant complains of the State's argument which allegedly invited the jury to punish Appellant for collateral matters which were beyond the circumstances surrounding the offense for which she had been convicted. The challenged argument was as follows:

> I consider the idea of letting Linda Rae Cox [sic] on probation for a crime of intentionally going to take the lives of two innocent victims to be preposterous—.

Appellant objected that the argument asked the jury "to convict for collateral offenses." After the trial court overruled the objection, the prosecutor continued:

> —so preposterous that I'm not going to talk to you about it [probation] because it is inconceivable that this woman could get probation for what she was thinking of doing. Her crime is indicative of a cold, deliberate nature.
>
> . . . . .
>
> This is a crime where two people sat down an [sic] consciously considered that they were going to take the lives of not two bad people, because certainly they knew in this circumstance who they were going to kill. They knew they were going to kill two people who [sic] all they had done was worked in [sic] jewelry store that [sic] were held up by a very bad human being.

From the entire context of the argument, it is clear the prosecutor was referring to the circumstances surrounding the commission of the conspiracy, and such an argument is

permissible. *See Gonzales v. State*, 807 S.W.2d 830, 836 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); *Winkfield v. State*, 792 S.W.2d 727, 730–31 (Tex.App.—Corpus Christi 1990, pet. ref'd). We conclude the instant argument was permissible insofar as it narrowly asked the jury to consider the facts and circumstances of the underlying conspiracy as aggravating factors which would enhance the gravity of Appellant's conduct. *Wilkerson v. State*, 736 S.W.2d 656, 660–61 (Tex.Crim.App.1987); *Lomas v. State*, 707 S.W.2d 566, 568–69 (Tex.Crim.App.1986). Accordingly, the trial court did not err in overruling the objection, and Appellant's sixth point of error is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.

---

**9.** Moreover, the language in the requested charge would have impermissibly singled out Appellant's testimonial evidence constituting a comment on the weight of the evidence. *Id.* Since inclusion of the instruction in the charge would have provided a standard upon which the jury should weigh the evidence by emphasizing a single witness's testimony, the request was properly denied for this reason as well. *See*

*Russell v. State*, 749 S.W.2d 77, 78 (Tex.Crim. App.1988). *See also generally, Jones v. State*, 632 S.W.2d 646, 648 (Tex.App.—El Paso 1982, pet. ref'd); *Bass v. State*, 830 S.W.2d 142, 147 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (requested "mere presence" charges constituted improper comments upon weight of evidence in drug possession cases).