**William Paul PEOPLES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–94–01237–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 6, 1996.

Rehearing Overruled July 3, 1996.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Lester Blizzard, Houston, for appellees.

Before WILSON, COHEN and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

After a jury trial, the appellant, William Paul Peoples, was convicted of solicitation of capital murder. The trial court assessed punishment at 10–years confinement. We affirm.

Robert Clyde Harrell, a tow-truck driver who was on parole, stated that in 1990, he became friends with a Houston police officer named Rich Phillips. Phillips would page Harrell whenever he needed to have an abandoned vehicle towed. In July 1993, Phillips paged Harrell and asked him to meet him at a doughnut shop. At the meeting, Phillips told Harrell he was not getting along with his wife and he would like to get rid of her. Phillips told Harrell he had an insurance policy on his wife and that "when insurance paid off he'd be willing to make somebody [a] good offer if they could get rid of his old lady for him." Phillips asked Harrell if he knew of anyone who could take care of the job, and Harrell responded he could probably find someone.

Phillips and Harrell met on several other occasions to discuss Phillips's plan to get rid of his wife. On a Friday evening in July 1993, Phillips met with Harrell at a Hilton Hotel where Phillips was providing security services. As the men were talking, appellant walked up and Phillips introduced him to Harrell. Appellant and Phillips were both Houston police officers and shared an apartment. Phillips told Harrell, "Bill would also like to get rid of his old lady." Although Phillips did most of the talking, Harrell was informed that appellant was having problems with his ex-wife because he was having trouble making his child support payments. Harrell testified appellant showed him a paystub that was all zeros. Appellant told Harrell he needed to "do something with his wife" because he could not make a living with her alive. Appellant told Harrell he had an insurance policy on his ex-wife. Phillips told Harrell there was an insurance policy on appellant's wife and "they would do the same thing with his wife that was done with [Phillips's] wife."

Harrell went back to the Hilton the next night and met with Phillips and appellant again. Harrell told them he was trying to get in touch with a guy and Phillips told him, "No hurry but the sooner the better." At this meeting appellant gave Harrell a page from a key map that showed where his ex-

wife lived and directions to her house. The envelope also contained two or three photos, but no money. Appellant asked Harrell when he thought he could get the job done, but Harrell told him that he did not know because he had not talked to anyone about it yet.

After the series of meetings with Phillips and appellant, Harrell talked to another wrecker driver, Bill Phillipson, about setting up a hit. Harrell did not know that Phillipson was a police informant. Phillipson told Harrell he would need a gun; Harrell passed this information on to Phillips. Phillips met Harrell in the parking lot of a doughnut shop and gave him a pistol and a bag of bullets.

Harrell then set up a meeting between himself, the informant Phillipson, and the hitman "Bobby." Bobby was in fact, Gary Johnson, an officer of the Harris County District Attorney's Office, Special Crimes Unit. Officer Johnson met with Harrell and the informant, Phillipson, at restaurant on September 4, 1993. Phillipson feigned illness and left Harrell alone with Officer Johnson. Officer Johnson was wearing a wire and recorded his conversation with Harrell. Harrell handed Officer Johnson a white envelope and said, "This is what you're going to need." Inside the envelope were several photos of a female and a key map page. On the outside of the envelope was writing describing the intended victim's vehicle. Harrell also gave Officer Johnson a bag of bullets and a pistol.

Harrell told Johnson there were two and possibly three targets. The first target was the female in the photos, appellant's wife. He was instructed that if he killed her he would receive $10,000. He would receive an extra $2000 if he also killed her male companion. The second target was a female who lived in Katy, apparently Phillips's wife. The second killing was contingent upon the elimination of the first target, appellant's wife. Harrell told Officer Johnson he would be paid by two separate individuals.

Harrell told Officer Johnson that the first individual was "good for the money" because he "had a deal going with the credit union." He also told Officer Johnson that the person ordering the hit would receive insurance money. Harrell told Officer Johnson that the second individual was "even in better financial shape than the first one."

After leaving Officer Johnson, Harrell returned to the Hilton where Phillips and appellant were waiting. When he told appellant the "hitman" was headed north to take care of his ex-wife appellant said, "Great, about time, we're glad to get it over with." Harrell said appellant was pleased with the news. Harrell then received a call on the radio to meet a customer. When he arrived at the location he was arrested.

Based on the directions Harrell had given to Officer Johnson, the police were able to locate the female in the pictures, Deborah Peoples Jacobs. After they spoke with Jacobs, appellant became a suspect in the case. The police recovered appellant's finger and palm print from the envelope Harrell had given Officer Johnson. The police then obtained an arrest warrant for appellant. On September 6, 1993, appellant was arrested at the police station. His residence was searched and the police recovered two ball point pens and several rounds of .38 caliber ammunition. The police also took a handwriting sample from appellant.

William Heilmann, an FBI handwriting expert, testified that the handwriting on the envelope and key map were appellant's. Drew Richardson, an FBI toxicologist, testified that the ink on the envelope was consistent with the Mont Blanc pen recovered from appellant's home. The ammunition Harrell gave Officer Johnson was the same type recovered from appellant's home.

At trial, the State presented evidence that Deborah Peoples Jacobs had a $100,000 insurance policy on her life; the beneficiary was appellant. There was also evidence that appellant obtained a $6000 loan from the Houston Police Department Federal Credit Union on June 18, 1993. Finally, there was evidence that in the summer of 1993, the Houston Police Department began taking child support payments out of appellant's paychecks. For the month of July 1993, the net amount of appellant's paycheck was $0.

### A. Reference to polygraph examination

In point of error one, appellant contends the trial court erred by overruling his

motion for mistrial after the State's witness made reference to a polygraph test he had taken. When the State was conducting its redirect examination of Robert Harrell, the following exchange took place:

[Prosecutor]: Let me also ask you, did you—is this the statement that you made, was that a sworn statement?

[Harrell]: This—

[Prosecutor]: Did you swear to it?

[Harrell]: I signed it, it was notarized later I believe. ·

[Prosecutor]: Okay. That's going to be—

. . . .

[Prosecutor]: I'm going to hand you what's marked State's Exhibit 21 and ask you if you recognize this statement?

[Harrell]: Yes. That was the statement that I give [sic] January or February and [I] took the lie detector test the same time.

Defense counsel objected and moved for a mistrial. The trial court overruled the motion, but instructed the jury to disregard Harrell's statement. Appellant contends the instruction to disregard was insufficient to cure the harm.

This case is very similar to *Richardson v. State*, 624 S.W.2d 912, 914–15 (Tex.Crim.App. 1981), in which the defense attorney was questioning a sexual assault victim about her prior statements to the police when the following exchange took place:

[Defense Counsel]: Have you made any more statements, L?

[L]: That paper?

[Defense Counsel]: Yeah, that paper. Is that the only thing you have signed?

[L]: Uh-huh-no. I have signed something else; it was when I went to take a polygraph test.

The court held that where a witness gives an unresponsive answer which mentions a polygraph test but does not mention the results of such test, there is no error in failing to grant a mistrial where the objection has been sustained and the jury instructed to disregard. *Id.* at 914–15.

This case is distinguishable from *Kugler v. State*, 902 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd), in which this

Court reversed because a police officer twice mentioned that the defendant had refused to submit to a polygraph examination. In *Kugler*, the police officer testified nonresponsively on **two separate occasions** and mentioned that the **defendant** had been afforded the opportunity to take a lie detector test, but had refused to do so. *Id.* However, in this case, the witness mentioned that he himself had taken a polygraph examination; he did not say whether he passed or failed the test, and the subject was never mentioned again.

This case is more akin to *Richardson* than *Kugler*. While the prosecutor was questioning Harrell about whether his previous statement was made under oath, Harrell answered nonresponsively that he had taken a polygraph on the same day the statement was made. Harrell did not mention the results of the test. There is no indication that the prosecutor deliberately elicited the testimony. The trial court instructed the jury to disregard the testimony, but denied appellant's motion for mistrial. The trial court did not err by refusing to grant the motion for mistrial.

We overrule point of error one.

### B. Co-conspirator's statements

■ In point of error two, the appellant contends the trial court erred by allowing Robert Harrell to testify about conversations he had with Rich Phillips about getting rid of Phillips's wife. Appellant contends the testimony was hearsay. The State argues that the statements were not hearsay because they were offered against appellant and were made by a co-conspirator during the course and in furtherance of the conspiracy. Tex. R.Crim.Evid. 801(e)(2)(E). Thus, it is the State's burden to show: (1) that at the time the statements were made the alleged co-conspirator was participating in a conspiracy in which the defendant also participated or later joined; and (2) that the statement was made in furtherance of the conspiracy. *Ward v. State*, 657 S.W.2d 133, 136 (Tex. Crim.App.1983).

Appellant argues that there are in fact two conspiracies in this case, one between Harrell

and Phillips to kill Phillips's wife and one between Harrell and appellant to kill appellant's wife. Appellant reasons that Phillips's statements to Harrell regarding plans to kill Phillips's wife, which were made before appellant became involved in the situation, were not in furtherance of any conspiracy to kill appellant's wife.

■ The fact that the conversations between Phillips and Harrell took place before appellant became involved is irrelevant. It is not necessary for the defendant to have joined or have been a part of the conspiracy at the time the statements were made by the co-conspirator as long as the statements were made in furtherance of the conspiracy. *United States v. Gonzalez–Balderas,* 11 F.3d 1218, 1224 (5th Cir.1994); *Rodriquez v. State,* 552 S.W.2d 451, 454 (Tex.Crim.App.1977). The issue is whether there was a single conspiracy or two conspiracies.

In *Cox v. State,* 843 S.W.2d 750, 753–54 (Tex.App.—El Paso 1992, pet. ref'd), an inmate and his cellmate developed a plan to murder several out-of-state witnesses. The cellmate convinced the inmate to disregard all offers made by other prisoners in the jail and to wait until a later time to take action on the plan. After a while, the cellmate was transferred to another prison where he eventually hired the defendant and her husband, who were prison guards, to carry out the murders. *Id.* At trial, the defendant argued that the earlier conversations between the inmate and his cellmate were not admissible because they were part of an earlier conspiracy, not the conspiracy that she eventually joined. The court held that the statements were admissible because the clear objective behind all the conversations was the elimination of the out-of-state witnesses. *Id.*

The present case is somewhat different because the goal of the conspiracy expanded after appellant joined the conspiracy. Rather than one target, there were now two targets. Nevertheless, Phillips's wife remained a target throughout all stages of the planning. In fact, the evidence shows that the killing of Phillips's wife was contingent on a successful "hit" on appellant's wife.

■ To determine whether there was a single conspiracy, the court should consider (1) whether the conspirators shared a common goal or objective; (2) the degree of dependence inherent in the conspiracy; and (3) the overlap of participants in the alleged conspiracy. *United States v. Tarantino,* 846 F.2d 1384, 1393 (D.C.Cir.), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

The evidence in the case shows that Phillips and appellant did have a common goal, *i.e.,* the murder of their spouses. There was also a great degree of dependence inherent in their plans to "get rid of" their spouses. They participated in joint meetings with Harrell in which they asked him to find a "hitman." Phillips supplied Harrell with the gun and bullets that were to be used in carrying out both hits. Finally, the second hit on Phillips's wife was contingent on the accomplishment of the first hit on appellant's wife. The evidence also shows that the same participants, Phillips, Harrell, and appellant, were involved with planning both hits.

These factors show there was but one conspiracy in this case, even though the planning of two crimes was involved. Because there was but one conspiracy, and Phillips's statements to Harrell were made in furtherance of that conspiracy, the trial court properly permitted Harrell to testify about Phillips's statements under TEX.R.CRIM.EVID. 801(e)(2)(E).

We overrule point of error two.

### C. Hearsay

■ In points of error three, four, and five, appellant contends the trial court erred by allowing the State to elicit testimony from appellant's co-worker that appellant told her on several occasions that he "would be better off ... if [his ex-wife] were dead," that he could "kill [his ex-wife] and never lose any sleep over it," and that he "wanted her dead."

■ Appellant argues that this testimony is inadmissible hearsay. We disagree. A statement is not hearsay if it is offered against a party and is his own statement. TEX.R.CRIM.EVID. 801(e)(2)(A). This rule,

which exempts admissions by a party opponent from the hearsay definition, recognizes that when dealing with admissions, the concern is not about the reliability and trustworthiness of an out-of-court statement. *Bell v. State*, 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd). Admissions are admitted because a party should not be allowed to exclude his own statement on the ground that what he said was untrustworthy. *Id.*

The testimony offered through appellant's co-worker consisted of appellant's own statements and were properly admitted as admissions by a party opponent.

We overrule points of error three, four, and five.

### D. Legal sufficiency of the evidence

■ In point of error six, appellant contends the evidence was legally insufficient to support the verdict. Specifically, appellant argues that the evidence was insufficient to corroborate the testimony of Robert Harrell, an accomplice witness.

■ A conviction may not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the offense. *Tran v. State*, 870 S.W.2d 654, 656 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); TEX.CODE CRIM.PROC. ANN. art. 38.14 (Vernon 1979). To test the sufficiency of the corroborating evidence, we eliminate from consideration the evidence given by the accomplice witness and then examine the remaining evidence to determine if there is other inculpatory evidence of incriminating character to connect the defendant with the commission of the offense. *Edwards v. State*, 427 S.W.2d 629, 632 (Tex. Crim.App.1968).

In this case, several items of physical evidence tended to corroborate Harrell's testimony about appellant's participation in plot to murder his ex-wife. When the latent fingerprint examiner for the Houston Police Department examined the envelope Harrell gave the "hitman," he discovered appellant's fingerprints and palm print on the envelope. An FBI expert on handwriting testified the handwriting that appeared on the envelope and the key map matched appellant's hand-

writing. When the police searched appellant's home they recovered a Mont Blanc pen; a toxicology expert for the FBI testified that the black ink found on the envelope was consistent with the ink in the Mont Blanc pen. The police also recovered several rounds of .38 caliber ammunition from appellant's home; this ammunition was the same type, manufacturer, and weight as the ammunition that was delivered to Harrell. In addition to the physical evidence, the State presented evidence that appellant had told a co-worker he wanted his ex-wife dead and that "the bitch needs to die." This evidence is legally sufficient to corroborate Harrell's testimony regarding appellant's involvement in the charged offense.

We overrule point of error six.

### E. Factual sufficiency of the evidence

■ In point of error seven, appellant contends the evidence is factually insufficient to corroborate Harrell's testimony. In reviewing the factual sufficiency of the evidence in a criminal case, an appellate court is not bound to view the evidence in the light most favorable to the prosecution and may consider the testimony of defense witnesses and the existence of alternative hypotheses. *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). The Court of Criminal Appeals recently adopted the Stone standard for factual sufficiency review in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Under *Stone*, a reviewing court should set aside the verdict on the grounds of factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 823 S.W.2d at 381.

Appellant argues the evidence is factually insufficient to corroborate Harrell's testimony because:

(1) The "hitman" admitted that at no time during his dealing with Robert Harrell was appellant's name ever mentioned;

(2) the fingerprint expert admitted that he was not able to recover appellant's fingerprints from anything but the envelope that Harrell gave the "hitman;"

(3) Robert Harrell acknowledged that it was Rich Phillips and not appellant who first brought up the idea of having someone killed; and

(4) the firearms examiner for the Houston Police Department admitted that the bullets Harrell gave to the "hitman" were very common.

While this evidence may weigh in appellant's favor, it does not "greatly outweigh the evidence in support of the verdict." *Clewis,* 922 S.W.2d at 135.

We overrule point of error seven.

We affirm the judgment.