In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00165-CR


______________________________




DANNY J. JESTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Gregg County, Texas


Trial Court No. 99-4761




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Danny J. Jester appeals his conviction on five counts of misdemeanor gambling charges,
including gambling promotion by participating in the earnings of a gambling place and becoming
a custodian of anything of value bet, keeping a gambling place, possession of a gambling device, 
and possession of gambling paraphernalia. He was convicted by a jury, and the trial court sentenced
him to a $1,500 fine on each count and ninety days' confinement, which was probated for a period
of six months with limited conditions.

 On appeal, Jester contends that the trial court erred by denying his requested jury charge on
the element of consideration, arguing that he was entitled to the instruction as a defensive issue, and
that the evidence is insufficient to support the verdict on each count based on the lack of any
evidence regarding consideration.

 The police seized several eight-liner machines from Jester's store, Gold Rush 777. The
machines seized operate in the following manner. A person inserts a minimum of one dollar into
the machine. For each dollar inserted, the machine dispenses one prepaid telephone card good for
three minutes of long distance. In addition to receiving the telephone card, the machine gives the
player 100 credits for each dollar inserted, which may be used to play the game. Each play consists
of allocating a number of credits to risk, pushing play, and the player either gains or loses credits
based on the new alignment of symbols displayed. Players may redeem the credits for gift
certificates in increments of 500 credits. Anyone could enter this same "sweepstakes" game without
purchasing a telephone card by sending in a postage-paid request form and redeeming the returned
certificate at the store for 100 credits on one of the machines. This free entry process was limited
to one entry per customer per day. 

 Jester was charged with five counts of gambling. (1) 

 Before the trial court officially charged the jury, Jester submitted in writing the following
proposed Amended Charge of the Court: 

 You are instructed as part of the law in this case that the element of
consideration is negated in a contest, sweepstakes, gambling or a lottery, if no part
of the consideration for the purchase of a product is directly or indirectly attributable
to the contest, prize or sweepstakes and no favoritism is shown to customers over
non-customers. 


The court refused to allow the instruction, submitting to the jury an instruction containing the
relevant statutory definitions and application paragraphs setting forth the elements of the charges.
The jury found Jester guilty on all counts.

 In reviewing the denial of a requested jury instruction, the court must determine first if it is
error and second, the extent of that error. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App.
1986). An error in a jury charge is subject to harmless error review. Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The Texas Court of Criminal Appeals has held that
a defendant is entitled to an instruction on every defensive issue raised by the evidence. Hayes v.
State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). Denial of an instruction on such an issue would
therefore be error. However, defendants are not entitled to an instruction that merely denies the
existence of an essential element of the State's case. See Cox v. State, 843 S.W.2d 750, 757 (Tex.
App.-El Paso 1992, pet. ref'd) (citing Green v. State, 566 S.W.2d 578, 584 (Tex. Crim. App.
1978)). (2)

 Jester argues that consideration is a necessary element of all the gambling offenses under
which he was charged and cites the definitions of bet, gambling device, and lottery in Tex. Pen.
Code Ann. § 47.01 (Vernon Supp. 2001), as well as the holdings in Brice v. State, 156 Tex. Crim.
372, 242 S.W.2d 433 (1951); State v. Socony Mobil Oil Co., 386 S.W.2d 169 (Tex. Civ. App.-San
Antonio 1964, writ ref'd n.r.e.); and Hoffman v. State, 219 S.W.2d 539 (Tex. Civ. App.-Dallas 1949,
no writ). The State rejects this contention and urges this court to determine if these cases, decided
under prior gambling laws, still apply. 

 Even before the definition of lottery was written into the statutes, Texas courts, resorting to
the popular meaning of the term, identified three elements in a lottery: prizes, chance, and direct or
indirect consideration. Cole v. State, 133 Tex. Crim. 548, 112 S.W.2d 725 (1937) (reh'g denied). 
The current Penal Code section defining lottery does not substantively vary from that definition, and
the ways in which the gambling statutes have changed does not affect the requirement of
consideration. Tex. Pen. Code Ann. § 47.01(7). The Texas Court of Criminal Appeals stated that
consideration regarding lotteries should be measured by the same rule as in contracts. Brice, 242
S.W.2d 433. The cases cited by Jester illustrate the application of this rule to lottery schemes,
focusing on whether the benefit of increased patronage satisfies the requirement for consideration. 
Consideration, included explicitly in the definition of gambling device, Section 47.01(4), and as
"something of value" in the definition of bet, should be treated in the same manner. In this case, the
requirement of consideration arises under those definitions. To warrant a conviction, the act or
omission must be plainly and unmistakably within the definition of the statute, and within both the
letter and the spirit of the law. Ex parte Wilmoth, 125 Tex. Crim. 274, 279, 67 S.W.2d 289, 291
(1934). Thus, we cannot ignore the fact that the Legislature included the term or language of
consideration in the definitions that apply to the gambling offenses. Consideration is an element of
those offenses. 

 Jester contends he had a right to the instruction on the defensive issue of lack of
consideration. Although testimony at trial raised this issue, the State argues that the instruction
merely negated an essential element of the State's case. Jester's instruction was more than simply
telling the jury that if an element of the State's case is lacking they must acquit, as did the denied
instruction in Green, which read "If you find from the evidence, or if you have a reasonable doubt
thereof, that [it] . . . was not a 'Public Place' as that term has been defined herein, then you shall
acquit the Defendant . . . ." Green v. State, 566 S.W.2d 578, 584 (Tex. Crim. App. 1978). However,
the denial of more similar instructions has been upheld, as in Cox, where the denied instruction read
in part "Mere presence at the scene of an alleged transaction or event or mere similarity in conduct
among various persons . . . does not necessarily establish proof of the existence of a conspiracy." 
Cox, 843 S.W.2d at 757. The court concluded the instruction essentially amounted to an alternative
theory as to the cumulative effect of the evidence. Id. The types of instructions regarding defensive
issues to which the courts have said a defendant is entitled include necessity (Withers v. State, 994
S.W.2d 742 (Tex. App.-Corpus Christi 1999, pet. ref'd)); voluntariness (Brown v. State, 955 S.W.2d
276 (Tex. Crim. App. 1997)); mistake of fact (Woodfox v. State, 742 S.W.2d 408 (Tex. Crim. App.
1987); but see Gardner v. State, 780 S.W.2d 259 (Tex. Crim. App. 1989), defendant not entitled to
instruction on mistake of fact when it involved an element the State was required to prove); accident,
self-defense (Hamel v. State, 916 S.W.2d 491 (Tex. Crim. App. 1996)). Jester's instruction provided
a negative definition of consideration, an element the State was required to prove beyond a
reasonable doubt. Therefore, Jester was not entitled to his requested instruction as a defensive issue
raised by the evidence, and the court did not err by denying it. In addition, Jester's requested
instruction stated nothing more than what could be logically deduced from the definitions provided
to the jury.

 Jester's first point of error is overruled. 

 In Jester's remaining points of error, he contends there was no evidence on at least one
element of each count and cites cases regarding both legal and factual insufficiency. Jester's
argument of insufficiency is based on the finding of consideration, so the review of the evidence will
be limited to that issue. 

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991), and look to see whether, after viewing the evidence
in the light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. In our review of the factual sufficiency of the
evidence, we view all the evidence and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996); Lisai v. State, 875 S.W.2d 35, 37 (Tex. App.-Texarkana 1994,
pet. ref'd); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.-Austin 1992, pet. ref'd, untimely filed).
In both sufficiency reviews, the trier of fact may draw reasonable inferences and is the exclusive
judge of the witnesses' credibility and the weight to give their testimonies. See Jones v. State, 944
S.W.2d 642, 647-49 (Tex. Crim. App. 1996); Bruno v. State, 922 S.W.2d 292, 293 (Tex. App.-
Amarillo 1996, no pet.).

 The evidence shows that in order to play the machine, a minimum of one dollar is inserted
into the machine. The testimony established that most players do insert money into the machine in
order to play the game, that those redeeming free entry certificates, requested by mail, must get an
employee to insert a dollar into the machine for them, and that the certificates were limited to one
per customer per day worth a nominal 100 credits. It is undisputed that the players receive a prepaid
telephone card for each dollar inserted. Although the value of the telephone cards was in dispute,
there was testimony that 33.33 cents per minute was much higher than the market price for prepaid
telephone card minutes and there was testimony that the telephone cards the investigating officer
tried to use did not work. There was evidence that players did not value the telephone cards, and
some did not know the slips of paper emitted from the machines were telephone cards. There was
also testimony that the employees were aware that the customers did not value the telephone cards,
that there were no signs on the outside of the building to indicate that telephone cards were sold
within, and that no employee had made a sales pitch to any of the customers promoting the purchase
of the telephone cards. 

 Unlike the cases cited by Jester, the finding of consideration in this case does not rest on the
operator's intent to increase patronage of a legitimate business. Here, the decision turns on whether 
the sweepstakes was intended to promote the sale of telephone cards or whether the telephone cards
were there as an attempt to legitimize an illegal gambling device. Even Brice, out of which Jester
pulled the substance of his requested instruction, acknowledged that the mere pretense of free prizes,
designed to evade the law, would not negate the element of consideration. Brice, 242 S.W.2d at 434
(citing Yellow-Stone Kit v. State, 7 So. 338 (Ala. 1889)). The evidence in this case was legally
sufficient for the jury to infer that the main purpose and function of the machines, and the business,
was to induce people to play the game, agreeing to gain or lose something of value at least partially
by chance, and not to promote telephone cards; that it was Jester's intent to structure the business to
entice players to exchange money for chances to play, which they did; and that the telephone cards
were not the primary subject of the transaction, but mere subterfuge. 

 Although testimony was provided regarding the redemption of the free games and the
telephone card minutes, as well as the higher market price for smaller denominated telephone cards
and Jester's intention to promote the telephone cards, the jury's determination was not so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust, and therefore, the
evidence was factually sufficient as well. Jester's points regarding the legal and factual insufficiency
of the evidence are overruled. 


 The judgment of the trial court is affirmed. 



 Ben Z. Grant

 Justice


Date Submitted: September 20, 2001

Date Decided: December 5, 2001


Publish


1. Jester was charged under the following statutory provisions:


 § 47.03. Gambling Promotion 

 (a) A person commits an offense if he intentionally or knowingly . . .


 . . . .


 (1) operates or participates in the earnings of a gambling place;

 . . . .


 (3) for gain, becomes a custodian of anything of value bet or offered
to be bet . . . .


 § 47.04. Keeping a Gambling Place

 (a) A person commits an offense if he knowingly uses . . . as a gambling place
any real estate, building, room . . . .


 § 47.06. Possession of Gambling Device, Equipment, or Paraphernalia

 (a) A person commits an offense if, with the intent to further gambling, he
knowingly owns, . . . or possesses any gambling device that he knows is designed for
gambling purposes . . . .


 . . . .


 (c) A person commits an offense if, with the intent to further gambling, the
person knowingly owns, manufactures, transfers commercially, or possesses
gambling paraphernalia.


Tex. Pen. Code Ann. §§ 47.03(a)(1), (3), 47.04(a), 47.06(a), (c) (Vernon 1994).


 The statutory definitions as they appeared in the jury charge included:


 "Bet" means an agreement to win or lose something of value solely or
partially by chance. 


 "Gambling" means making a bet on the partial or final result of a game or
contest or on the performance of a participant in a game or contest or playing or
betting for money or other thing of value at any game played with cards, dice, balls,
or any other gambling device. 


 "Gambling place" means any real estate, building, room, tent, vehicle, boat,
or other property whatsoever, one of the uses of which is the making or settling of
bets, bookmaking, or the conducting of a lottery or the playing of gambling devices. 


 "Gambling device" means any electronic, electromechanical, or mechanical
contrivance not excluded under Paragraph (B) that for consideration affords the
player an opportunity to obtain anything of value, the award of which is determined
solely or partially by chance, even though accompanied by some skill, whether or not
the prize is automatically paid by the contrivance. The term:


 (A) includes, but is not limited to, gambling device versions of bingo, keno,
blackjack, lottery, roulette, video poker, or similar electronic,
electromechanical, or mechanical games, or facsimiles thereof, that operate
by chance or partially so, that as a result of the play or operation of the game
award credits or free games, and that record the number of free games or
credits so awarded and the cancellation or removal of the free games or
credits; and 
(B) does not include any electronic, electromechanical, or mechanical
contrivance designed, made, and adapted solely for bona fide amusement
purposes if the contrivance rewards the player exclusively with noncash
merchandise prizes, toys, or novelties, or a representation of value
redeemable for those items, that have a wholesale value available from a
single play of the game or device of not more than 10 times the amount
charged to play the game or device once or $5, whichever is less. 


 "Gambling paraphernalia" means any book, instrument, or apparatus by
means of which bets have been or may be recorded or registered; any record, ticket,
certificate, bill, slip, token, writing, scratch sheet, or other means of carrying on
bookmaking, wagering pools, lotteries, numbers, policy, or similar games. 


 . . . .


 "Lottery" means any scheme or procedure whereby one or more prizes are
distributed by chance among persons who have paid or promised consideration for
a chance to win anything of value, whether such scheme or procedure is called a
pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name. 


 "Thing of value" means any benefit, but does not include an unrecorded and
immediate right of replay not exchangeable for value. 


 The definitions for "intentionally," "knowingly," and "possession" were also included in the
jury charge.
2. The State would urge this court to adopt the Giraldi analysis, developed by the federal
courts, to review the denial of a requested jury instruction. See United States v. Giraldi, 86 F.3d
1368 (5th Cir. 1996). Under this analysis, the court abuses its discretion only if the requested
instruction is substantively correct, not substantively covered in the charge ultimately given to the
jury, and its omission would severely impair the defendant's ability to present his defense. Id. The
analysis our courts have applied is an abuse of discretion standard based on Tex. R. Civ. P. 277,
which states that the trial court shall submit such instructions and definitions as shall be proper to
enable the jury to render a verdict. The trial court abuses its discretion if it denies an instruction that
contains a correct statement of the law as applicable to the facts and that is so necessary to enable
the jury to render properly a verdict that the court's refusal probably caused the rendition of an
improper verdict. Riggs v. Sentry Ins., 821 S.W.2d 701, 705 (Tex. App.-Houston [14th Dist.] 1991,
writ denied). These two standards are very similar. However, because Jester's only objection at trial
and issue on appeal regarding the denial of this instruction was that Jester was entitled to the
instruction as a defensive issue raised by the evidence, we need not consider any other grounds on
which the instruction actually given to the jury regarding consideration may have been improper. 


e-noshow:yes;
 mso-style-priority:99;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-padding-alt:0in 5.4pt 0in 5.4pt;
 mso-para-margin-top:0in;
 mso-para-margin-right:0in;
 mso-para-margin-bottom:10.0pt;
 mso-para-margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00092-CR

                                                ______________________________

 

 

                       MARQUIS LEQUAVIOR MARSHALL,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 71st Judicial District Court

                                                           Harrison County, Texas

                                                         Trial Court
No. 10-0212X

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Marquis
Lequavior Marshall challenges a restitution order contained within the trial courts
judgment adjudicating his guilt for the offense of burglary of a building.[1]   Marshall argues that no evidence supports
the restitution order of $1,751.20.  We
disagree.  

            We
review challenges to restitution orders under an abuse of discretion standard.  Cantrell
v. State, 75 S.W.3d 503, 512 (Tex. App.Texarkana 2002, pet. refd) (citing
Cartwright v. State, 605 S.W.2d 287,
28889 (Tex. Crim. App. [Panel Op.] 1980)). 
A trial court abuses its discretion when it acts in an arbitrary or
unreasonable manner.  Id. (citing Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990)).  The amount of restitution must
be supported by the record.  Campbell v. State, 5 S.W.3d 693, 696,
699 (Tex. Crim. App. 1999) (citing Cartwright,
605 S.W.2d at 289).  

            The
States indictment alleged that Marshall intentionally or knowingly enter[ed]
a building or a portion of a building without the effective consent of Alan
Matysiak, the owner thereof, and attempted to commit or committed theft of
property, to-wit: cash register, tobacco products, and U.S. Currency, owned by
Alan Matysiak.  Marshall and his mother
met with investigators and offered the following information:

[Marshall] and a guy named Joe broke into the
store at the intersection of FM 9 and FM 1999 a couple of days ago.  Marshall advised me that he drove his father[]s
truck to the store along with Joe. 
Marshall stated that they parked behind the store and they walked up to
the front door of the store.  Marshall
stated that Joe threw a center [sic] block brick through the front door glass
and they both entered the building without the owner[]s consent.  Marshall stated that they stole some
cigarettes, cigars, change, cash register, and a trash can.

 

            Pursuant
to a plea agreement, Marshall agreed, in writing, to repay a sum of $1,751.20
to Matysiak in the form of restitution.[2]  Accordingly, the trial courts order of
deferred adjudication contained the requirement that Marshall repay $1,751.20
to Alan Matysiak.  The restitution
amount and requirement was included in the terms and conditions of Marshalls
community supervision.  He signed these
terms and voluntarily assented and agreed to the same and bound [him]self to
comply with the same, never complaining of the amount of restitution set
pursuant to his contract in the form of a plea agreement with the trial
court.  The State filed a motion to
proceed with adjudication of guilt. 
Among other allegedly violated conditions of community supervision, the
State alleged Marshall failed to pay Victim restitution: $1,751.20 at the rate
of $45.00 per month pursuant to condition ten of his conditions of community
supervision.  Marshall pled true to the
States motion and entered a written, specific judicial confession to violating
this condition.  

            Q         . . . . You did not make any of your
payments; correct?

 

            A         Yes, sir. 

 

            Q         Okay. 
Did not do the Crime Stopper, did not pay restitution to the
victim.  Did you make a dent in the
$1,751 that you owed the victim at all?

 

            A         No, sir. 

 

The trial court continued Marshall
on community supervision, but confirmed that the Court is going to make sure
that the record is clear that you still will be required to pay the restitution
of $1,751.21 to the victim in this matter. 


            Again,
Marshalls complaint is only to the sufficiency of the evidence supporting the
amount of restitution.  However, the
restitution amount is supported by his written agreement to pay $1,751.21 in
restitution to the victim, judicial confession that he had violated his
community supervision for failing to pay this amount in installments of $45.00
per month, and testimony at the hearing on the motion to adjudicate
acknowledging the payment amount. 
Therefore, we cannot say that the trial court abused its discretion in
ordering restitution in this amount.  

            We
affirm the trial courts judgment.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August
12, 2011

Date Decided:             August
15, 2011

 

Do Not Publish











[1]Marshall
was sentenced to two years in state jail. 
His sentence was suspended, and he was placed on five years community
supervision.  





[2]He
signed a stipulation of evidence, but said the stipulation did not mention
restitution.