**Danny J. JESTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00165–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 20, 2001.

Decided Dec. 5, 2001.

Hayward M. Rigano II, Longview, for appellant.

Andy Porter, Asst. Dist. Atty., Longview, for state.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Danny J. Jester appeals his conviction on five counts of misdemeanor gambling charges, including gambling promotion by participating in the earnings of a gambling place and becoming a custodian of anything of value bet, keeping a gambling place, possession of a gambling device, and possession of gambling paraphernalia. He was convicted by a jury, and the trial court sentenced him to a $1,500 fine on each count and ninety days' confinement, which was probated for a period of six months with limited conditions.

On appeal, Jester contends that the trial court erred by denying his requested jury charge on the element of consideration, arguing that he was entitled to the instruction as a defensive issue, and that the evidence is insufficient to support the verdict on each count based on the lack of any evidence regarding consideration.

The police seized several eight-liner machines from Jester's store, Gold Rush 777. The machines seized operate in the following manner. A person inserts a minimum of one dollar into the machine. For each dollar inserted, the machine dispenses one prepaid telephone card good for three min-

utes of long distance. In addition to receiving the telephone card, the machine gives the player 100 credits for each dollar inserted, which may be used to play the game. Each play consists of allocating a number of credits to risk, pushing play, and the player either gains or loses credits based on the new alignment of symbols displayed. Players may redeem the credits for gift certificates in increments of 500 credits. Anyone could enter this same "sweepstakes" game without purchasing a telephone card by sending in a postage-paid request form and redeeming the returned certificate at the store for 100 credits on one of the machines. This free entry process was limited to one entry per customer per day.

Jester was charged with five counts of gambling.[1]

1. Jester was charged under the following statutory provisions:

§ 47.03. Gambling Promotion

(a) A person commits an offense if he intentionally or knowingly . . .

. . . .

(1) operates or participates in the earnings of a gambling place;

. . . .

(3) for gain, becomes a custodian of anything of value bet or offered to be bet. . . .

§ 47.04. Keeping a Gambling Place

(a) A person commits an offense if he knowingly uses . . . as a gambling place any real estate, building, room. . . .

§ 47.06. Possession of Gambling Device, Equipment, or Paraphernalia

(a) A person commits an offense if, with the intent to further gambling, he knowingly owns, . . . or possesses any gambling device that he knows is designed for gambling purposes. . . .

. . . .

(c) A person commits an offense if, with the intent to further gambling, the person knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia. Tex. Pen.Code Ann. §§ 47.03(a)(1), (3), 47.04(a), 47.06(a), (c) (Vernon 1994).

The statutory definitions as they appeared in the jury charge included:

"Bet" means an agreement to win or lose something of value solely or partially by chance.

"Gambling" means making a bet on the partial or final result of a game or contest or on the performance of a participant in a game or contest or playing or betting for money or other thing of value at any game played with cards, dice, balls, or any other gambling device.

"Gambling place" means any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the making or settling of bets, bookmaking, or the conducting of a lottery or the playing of gambling devices.

"Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

(A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with non-cash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

"Gambling paraphernalia" means any book, instrument, or apparatus by means of which bets have been or may be recorded or registered; any record, ticket, certificate, bill, slip, token, writing, scratch sheet, or other means of carrying on bookmaking, wagering pools, lotteries, numbers, policy, or similar games.

. . . .

"Lottery" means any scheme or procedure whereby one or more prizes are distributed by

■ Before the trial court officially charged the jury, Jester submitted in writing the following proposed Amended Charge of the Court:

> You are instructed as part of the law in this case that the element of consideration is negated in a contest, sweepstakes, gambling or a lottery, if no part of the consideration for the purchase of a product is directly or indirectly attributable to the contest, prize or sweepstakes and no favoritism is shown to customers over non-customers.

The court refused to allow the instruction, submitting to the jury an instruction containing the relevant statutory definitions and application paragraphs setting forth the elements of the charges. The jury found Jester guilty on all counts.

■ In reviewing the denial of a requested jury instruction, the court must determine first if it is error and second, the extent of that error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). An error in a jury charge is subject to harmless error review. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)

(op. on reh'g). The Texas Court of Criminal Appeals has held that a defendant is entitled to an instruction on every defensive issue raised by the evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim. App.1987). Denial of an instruction on such an issue would therefore be error. However, defendants are not entitled to an instruction that merely denies the existence of an essential element of the State's case. *See Cox v. State*, 843 S.W.2d 750, 757 (Tex.App.—El Paso 1992, pet. ref'd) (citing *Green v. State*, 566 S.W.2d 578, 584 (Tex.Crim.App.1978)).[2]

Jester argues that consideration is a necessary element of all the gambling offenses under which he was charged and cites the definitions of *bet, gambling device*, and *lottery* in TEX. PEN.CODE ANN. § 47.01 (Vernon Supp.2001), as well as the holdings in *Brice v. State*, 156 Tex.Crim. 372, 242 S.W.2d 433 (1951); *State v. Socony Mobil Oil Co.*, 386 S.W.2d 169 (Tex.Civ. App.—San Antonio 1964, writ ref'd n.r.e.); and *Hoffman v. State*, 219 S.W.2d 539 (Tex.Civ.App.—Dallas 1949, no writ). The

---

chance among persons who have paid or promised consideration for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name.

"Thing of value" means any benefit, but does not include an unrecorded and immediate right of replay not exchangeable for value.

The definitions for "intentionally," "knowingly," and "possession" were also included in the jury charge.

2. The State would urge this court to adopt the *Giraldi* analysis, developed by the federal courts, to review the denial of a requested jury instruction. *See United States v. Giraldi*, 86 F.3d 1368 (5th Cir.1996). Under this analysis, the court abuses its discretion only if the requested instruction is substantively correct, not substantively covered in the charge ultimately given to the jury, and its omission would severely impair the defendant's ability to present his defense. *Id.* The analysis our

courts have applied is an abuse of discretion standard based on TEX.R. CIV. P. 277, which states that the trial court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. The trial court abuses its discretion if it denies an instruction that contains a correct statement of the law as applicable to the facts and that is so necessary to enable the jury to render properly a verdict that the court's refusal probably caused the rendition of an improper verdict. *Riggs v. Sentry Ins.*, 821 S.W.2d 701, 705 (Tex.App.—Houston [14th Dist.] 1991, writ denied). These two standards are very similar. However, because Jester's only objection at trial and issue on appeal regarding the denial of this instruction was that Jester was entitled to the instruction as a defensive issue raised by the evidence, we need not consider any other grounds on which the instruction actually given to the jury regarding consideration may have been improper.

·

State rejects this contention and urges this court to determine if these cases, decided under prior gambling laws, still apply.

 Even before the definition of *lottery* was written into the statutes, Texas courts, resorting to the popular meaning of the term, identified three elements in a *lottery:* prizes, chance, and direct or indirect consideration. *Cole v. State,* 133 Tex. Crim. 548, 112 S.W.2d 725 (1937) (reh'g denied). The current Penal Code section defining *lottery* does not substantively vary from that definition, and the ways in which the gambling statutes have changed does not affect the requirement of consideration. TEX. PEN.CODE ANN. § 47.01(7). The Texas Court of Criminal Appeals stated that consideration regarding lotteries should be measured by the same rule as in contracts. *Brice,* 156 Tex.Crim. 372, 242 S.W.2d 433. The cases cited by Jester illustrate the application of this rule to lottery schemes, focusing on whether the benefit of increased patronage satisfies the requirement for consideration. *Consideration,* included explicitly in the definition of *gambling device,* Section 47.01(4), and as "something of value" in the definition of *bet,* should be treated in the same manner. In this case, the requirement of consideration arises under those definitions. To warrant a conviction, the act or omission must be plainly and unmistakably within the definition of the statute, and within both the letter and the spirit of the law. *Ex parte Wilmoth,* 125 Tex.Crim. 274, 279, 67 S.W.2d 289, 291 (1934). Thus, we cannot ignore the fact that the Legislature included the term or language of consideration in the definitions that apply to the gambling offenses. Consideration is an element of those offenses.

Jester contends he had a right to the instruction on the defensive issue of lack of consideration. Although testimony at trial raised this issue, the State argues that the instruction merely negated an essential element of the State's case. Jester's instruction was more than simply telling the jury that if an element of the State's case is lacking they must acquit, as did the denied instruction in *Green,* which read "If you find from the evidence, or if you have a reasonable doubt thereof, that [it] ... was not a 'Public Place' as that term has been defined herein, then you shall acquit the Defendant...." *Green v. State,* 566 S.W.2d 578, 584 (Tex.Crim.App. 1978). However, the denial of more similar instructions has been upheld, as in *Cox,* where the denied instruction read in part "Mere presence at the scene of an alleged transaction or event or mere similarity in conduct among various persons ... does not necessarily establish proof of the existence of a conspiracy." *Cox,* 843 S.W.2d at 757. The court concluded the instruction essentially amounted to an alternative theory as to the cumulative effect of the evidence. *Id.* The types of instructions regarding defensive issues to which the courts have said a defendant is entitled include necessity (*Withers v. State,* 994 S.W.2d 742 (Tex.App.—Corpus Christi 1999, pet. ref'd)); voluntariness (*Brown v. State,* 955 S.W.2d 276 (Tex. Crim.App.1997)); mistake of fact (*Woodfox v. State,* 742 S.W.2d 408 (Tex.Crim.App. 1987); *but see Gardner v. State,* 780 S.W.2d 259 (Tex.Crim.App.1989), defendant not entitled to instruction on mistake of fact when it involved an element the State was required to prove); accident, self-defense (*Hamel v. State,* 916 S.W.2d 491 (Tex.Crim.App.1996)). Jester's instruction provided a negative definition of consideration, an element the State was required to prove beyond a reasonable doubt. Therefore, Jester was not entitled to his requested instruction as a defensive issue raised by the evidence, and the court did not err by denying it. In addition, Jester's requested instruction stated noth-

ing more than what could be logically deduced from the definitions provided to the jury.

Jester's first point of error is overruled.

In Jester's remaining points of error, he contends there was no evidence on at least one element of each count and cites cases regarding both legal and factual insufficiency. Jester's argument of insufficiency is based on the finding of consideration, so the review of the evidence will be limited to that issue.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), and look to see whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); *Lisai v. State*, 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). In both sufficiency reviews, the trier of fact may draw reasonable inferences and is the exclusive judge of the witnesses' credibility and the weight to give their testimonies. *See Jones v. State*, 944 S.W.2d 642, 647–49 (Tex.Crim.App. 1996); *Bruno v. State*, 922 S.W.2d 292, 293 (Tex.App.—Amarillo 1996, no pet.).

The evidence shows that in order to play the machine, a minimum of one dollar is inserted into the machine. The testimony established that most players do insert money into the machine in order to play the game, that those redeeming free entry certificates, requested by mail, must get an employee to insert a dollar into the machine for them, and that the certificates were limited to one per customer per day worth a nominal 100 credits. It is undisputed that the players receive a prepaid telephone card for each dollar inserted. Although the value of the telephone cards was in dispute, there was testimony that 33.33 cents per minute was much higher than the market price for prepaid telephone card minutes and there was testimony that the telephone cards the investigating officer tried to use did not work. There was evidence that players did not value the telephone cards, and some did not know the slips of paper emitted from the machines were telephone cards. There was also testimony that the employees were aware that the customers did not value the telephone cards, that there were no signs on the outside of the building to indicate that telephone cards were sold within, and that no employee had made a sales pitch to any of the customers promoting the purchase of the telephone cards.

Unlike the cases cited by Jester, the finding of consideration in this case does not rest on the operator's intent to increase patronage of a legitimate business. Here, the decision turns on whether the sweepstakes was intended to promote the sale of telephone cards or whether the telephone cards were there as an attempt to legitimize an illegal gambling device. Even *Brice*, out of which Jester pulled the substance of his requested instruction, acknowledged that the mere pretense of free prizes, designed to evade the law, would not negate the element of consideration. *Brice*, 242 S.W.2d at 434 (citing *Yellow–Stone Kit v. State*, 88 Ala. 196, 7 So. 338 (1889)). The evidence in this case was legally sufficient for the jury to infer that

the main purpose and function of the machines, and the business, was to induce people to play the game, agreeing to gain or lose something of value at least partially by chance, and not to promote telephone cards; that it was Jester's intent to structure the business to entice players to exchange money for chances to play, which they did; and that the telephone cards were not the primary subject of the transaction, but mere subterfuge.

Although testimony was provided regarding the redemption of the free games and the telephone card minutes, as well as the higher market price for smaller denominated telephone cards and Jester's intention to promote the telephone cards, the jury's determination was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, and therefore, the evidence was factually sufficient as well. Jester's points regarding the legal and factual insufficiency of the evidence are overruled.

The judgment of the trial court is affirmed.