James Danl Housden v. The State of Texas





COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-380-CR
 
  
JAMES 
DANL HOUSDEN                                                        APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant of aggravated assault on a public servant and sentenced 
him to ten years’ confinement in the Institutional Division of the Texas 
Department of Criminal Justice. Appellant brings three points on appeal, arguing 
that the trial court erred in failing to charge the jury on the lesser included 
offense of deadly conduct and on the issue of self defense and that he was 
denied his right to compulsory process and due process when the trial court 
quashed his subpoenas. Because we hold that the trial court did not err, we 
affirm the trial court’s judgment.
Background 
Facts
        A 
warrant had issued in Colorado for Appellant’s arrest on a hot check charge. 
Appellant fled Colorado, heading for Texas. On his way to Texas, he was stopped 
in Oklahoma and arrested on the Colorado warrant. Appellant challenged 
extradition and was released from jail on a $30,000 bond. He then fled Oklahoma, 
and an Oklahoma warrant was issued for his arrest.
        In 
Denton, police officers learned of the warrants. An undercover team planned to 
corner Appellant when he arrived at Albertson’s for an appointment with a 
woman. The officers, dressed variously in sweats and other civilian attire, were 
driving unmarked cars. One officer, Officer Padgett, pulled an unmarked car in 
front of Appellant’s truck while another unmarked car carrying two officers, 
Officer Jones and Officer Lane, pulled behind Appellant. Officer Padgett jumped 
out of the car. Some evidence showed that he held his badge and gun up as he ran 
toward the driver’s side of the truck and yelled, “Police— get your hands 
up.” One of the officers in the rear car, Officer Jones, ran to the truck’s 
passenger door. Evidence in the record showed that Officer Jones banged on the 
passenger window and also yelled “Police—get your hands up.” There was 
also evidence that Officer Jones’s badge and gun were visible. The other 
officer in the rear car, Officer Lane, headed for the driver’s-side door of 
Appellant’s truck. There is evidence that he also yelled, “Police—get your 
hands up” at Appellant. Officer Lane then opened the driver’s-side door.
        Appellant, 
however, was aware that bounty hunters were looking for him. There is some 
evidence that he believed the shouting men who had cornered him were bounty 
hunters and that he believed that they were yelling “bounty hunter,” not 
police officer. When Officer Lane opened the door, Appellant put his truck in 
reverse and floored the accelerator, squealing the tires and hitting the 
unmarked car behind him. Officer Lane was hit by the open door but did not fall 
down. Appellant then put the truck in drive and headed forward. Officer Lane 
grabbed Appellant and pulled him from the truck. Although Officer Lane and 
Appellant were no longer in the truck, the truck continued to move forward. 
Hoping to stop the truck, Officer Craig, Officer Padgett’s partner who had 
been monitoring the situation from a distance, fired two shots at the rear tires 
of the truck. The officers ultimately arrested Appellant and charged him with 
aggravated assault of a public servant.
Lesser Included 
Offense of Deadly Conduct
        In 
his first point, Appellant argues that he was entitled to a jury charge on the 
lesser included offense of deadly conduct. A person commits the offense of 
assault when the person intentionally or knowingly threatens another with 
imminent bodily injury.[2]  A person commits the 
offense of aggravated assault if the person commits an assault and uses or 
exhibits a deadly weapon during a commission of the offense.[3]  
Aggravated assault is a second degree felony unless it is committed against a 
person whom the actor knows to be a public servant in the lawful discharge of an 
official duty.[4]  Under this circumstance, the 
offense becomes a first degree felony.[5]
        A 
person commits the offense of deadly conduct when he recklessly engages in 
conduct that places another in imminent danger of serious bodily injury.[6] The offense of deadly conduct is a class A misdemeanor if 
it is committed without discharging a firearm.[7]
        In 
determining whether a defendant is entitled to a lesser included offense 
instruction, the reviewing court must apply a two-pronged test.[8]  
The reviewing court must determine (1) whether the lesser offense is included 
within the proof necessary to establish the charged offense and (2) whether 
evidence exists in the record that would permit a jury rationally to find that, 
if the defendant is guilty, he is guilty of only the lesser included offense.[9]
        The 
State concedes that deadly conduct is a lesser included offense of aggravated 
assault.[10]  The State, however, challenges 
whether there was more than a scintilla of evidence in the record that would 
permit a rational jury to find that Appellant was guilty only of deadly conduct.
        At 
trial, Appellant’s defense was that he did not realize the casually dressed 
police officers were peace officers and not bounty hunters. Despite 
Appellant’s belief that the peace officers were bounty hunters, there is no 
evidence that Appellant acted recklessly rather than intentionally or knowingly. 
Therefore, a rational jury could not have found that Appellant was guilty only 
of deadly conduct.
        A 
person acts recklessly with respect to the circumstances surrounding his conduct 
or the result of his conduct when he is aware of but consciously disregards a 
substantial and unjustifiable risk that the circumstances exist or that the 
result will occur.[11]  And a person acts 
intentionally with respect to the nature of his conduct or to a result of his 
conduct when it is his conscious objective or desire to engage in the conduct or 
cause the result.[12]  A person acts knowingly 
with respect to the nature of his conduct or to circumstances surrounding his 
conduct when he is aware of the nature of his conduct or that the circumstances 
exist. [13]  A person acts knowingly with 
respect to a result of his conduct when he is aware that his conduct is 
reasonably certain to cause the result.[14]
        The 
record reflects that the door to the truck was open and that Officer Lane was 
standing beside Appellant. With Officer Lane standing inside the open doorway, 
Appellant’s quick acceleration to the rear can only be seen as an intentional 
attempt to knock Officer Lane to the ground, that is, an attempt to strike him. 
We have carefully searched the record, and there is no evidence that Appellant 
merely acted recklessly. The record clearly reflects that Appellant 
intentionally accelerated his truck in reverse knowing that the door would 
strike Officer Lane. We overrule Appellant’s first point.
Self Defense
        In 
his second point, Appellant argues that the trial court erred in denying his 
requested jury charge on self defense. A person is entitled to an instruction on 
self defense if the issue is raised by the evidence, whether that evidence is 
strong or weak, unimpeached, or uncontradicted, and regardless of the 
credibility of the defense.[15]  The denial of a 
defendant’s requested instruction is not error, however, when the requested 
instruction merely denies the existence of an essential element of the State’s 
case.[16]
        Here, 
Appellant argues that he was entitled to the self defense instruction because he 
believed the men who surrounded his truck were bounty hunters, not public 
servants. But because Appellant was charged with aggravated assault on a public 
servant, the State was required to prove that Appellant knew Officer Lane was a 
public servant.[17] The jury charge instructed the 
jury to convict Appellant only if the State had proven, beyond a reasonable 
doubt, that Appellant intentionally or knowingly threatened Officer Lane and 
that Appellant knew that Officer Lane was a police officer who was lawfully 
discharging an official duty. Therefore, if the jury believed that Appellant did 
not know Officer Lane was a police officer, it would have acquitted Appellant. 
Consequently, Appellant requested a self defense instruction that merely negates 
an essential element of the State’s case.
        Furthermore, 
self defense does not justify resisting an arrest that the actor knows is being 
made by a peace officer, even if the arrest is unlawful, unless before the actor 
offers any resistance, the peace officer uses or attempts to use greater force 
than necessary and the actor reasonably believes the force is immediately 
necessary to protect himself against the peace officer’s use or attempted use 
of greater force than necessary.[18]
        Although 
there is evidence in the record that Appellant believed that the men who 
surrounded his truck were bounty hunters, our review of the record yields no 
evidence that Appellant was the victim of an unlawful show of force.[19] Appellant concedes that there was a warrant for his 
arrest and that he was lawfully arrested on that warrant. Because Appellant does 
not allege that the officers used unlawful force,[20] 
it is clear that he requested an instruction that merely negates an essential 
element of the State’s case. Thus, he is not entitled to a self defense 
instruction,[21] and the trial court did not err in 
denying his request for the self defense charge. We overrule Appellant’s 
second point.
Compulsory 
Process
        In 
his third point, Appellant argues that the trial court erred in quashing his 
subpoenas seeking recordings of telephone calls between Appellant, a third 
party, and Detective Jeff Davis. Appellant contended that within days of the 
arrest, Detective Davis told him in a three-way telephone call between Detective 
Davis, a third party, and Appellant that he would probably be charged with 
misdemeanor evading arrest. Appellant argues that because of an internal 
investigation, the officers decided instead to charge him with the greater 
offense of aggravated assault of a peace officer.
        Appellant 
argues that he was denied his Sixth Amendment right to compulsory process and 
his Fourteenth Amendment right to due process. Denial of compulsory process is a 
denial of due process.[22]  The sixth amendment 
right to compulsory process in a criminal case guarantees compulsory process for 
obtaining evidence that would be both material and favorable to the defense.[23] The subpoenas, however, requested recordings of the 
telephone conversation involving a police officer, Detective Davis, who was not 
present at the arrest. The requested evidence was Detective Davis’s opinion of 
the credibility of the officers who testified they believed Appellant had 
imminently threatened them with bodily injury.
        Although 
the third party did not testify, Appellant represented that she did not remember 
the conversation in detail. Detective Davis, however, testified that he did not 
tell Appellant that he would be charged with misdemeanor evading arrest. 
Furthermore, the record reflects that there was not an internal investigation; 
there was only a routine investigation that is conducted anytime shots are fired 
by an officer. Appellant did not testify concerning this matter.
        Arguing 
that the third party was “unavailable” to testify about the telephone calls 
between Detective Davis, Appellant, and the third party because the third party 
did not remember the details of the conversation, Appellant subpoenaed the cell 
phone records of Detective Davis for the dates February 27th through March 30th. 
Appellant also subpoenaed all telephone records, documents, and electronically 
recorded conversations of telephone calls to or from any of fifteen Denton 
County Jail telephone numbers during a thirty-day period from both Evercom, the 
telephone company that provides service to the Denton County Jail, and the 
Denton County Sheriff’s Office.
        At 
the hearing on both Evercom’s and Denton County Sheriff’s Office’s motions 
to quash the subpoena, Appellant argued that the three-way calls at issue would 
have come from three numbers either outgoing from or incoming to Detective 
Davis’s cell phone. The trial court conducted an in camera inspection of 
Detective Davis’s records and announced that none of the three numbers was 
listed. Applying an abuse of discretion standard,[24] 
we find the trial court did not abuse its discretion in quashing Appellant’s 
subpoenas. We overrule Appellant’s third point.
Conclusion
        Having 
overruled all Appellant’s points, we affirm the trial court’s judgment.
 
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
PANEL 
B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
September 9, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Tex. Penal Code Ann. § 
22.01(a)(2)(Vernon Supp. 2004-05).
3.  
Id. § 22.02(a)(2).
4.  
Id. § 22.02(b)(2).
5.  Id.
6.  
Id. § 22.05(a) (Vernon 2003).
7.  
Id. § 22.05(e).
8.  
Lofton v. State, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001).
9.  
Id.
10.  
See Bell v. State, 693 S.W.2d 434, 437-39 (Tex. Crim. App. 1985).
11.  
Tex. Penal Code Ann. § 6.03(c) 
(Vernon 2003).
12.  
Id. § 6.03(a).
13.  
Id. § 6.03(b).
14.  
Id.
15.  
Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).
16.  
Jester v. State, 64 S.W.3d 553, 556 (Tex. App.—Texarkana 2001, no 
pet.); Chavers v. State, 991 S.W.2d 457, 460 (Tex. App.—Houston [1st 
Dist.] 1999, pet. ref’d).
17.  
See Tex. Penal Code Ann. § 
22.02(b)(2) (Vernon Supp. 2004-05).
18.  
Id. § 9.31(b)(2), (c) (Vernon 2003).
19.  
See id. § 9.31(b)(2).
20.  
See id. § 9.31(c).
21.  
See id; Jester, 64 S.W.3d at 556; Chavers, 991 
S.W.2d at 460.
22.  
See Coleman v. State, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998).
23.  
Id.
24.  
Drew v. State, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987).