James Danl Housden v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-380-CR

JAMES DANL HOUSDEN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 158
TH
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant of aggravated assault on a public servant and sentenced him to ten years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  Appellant brings three points on appeal, arguing that the trial court erred in failing to charge the jury on the lesser included offense of deadly conduct and on the issue of self defense and that he was denied his right to compulsory process and due process when the trial court quashed his subpoenas.  Because we hold that the trial court did not err, we affirm the trial court’s judgment.

Background Facts

A warrant had issued in Colorado for Appellant’s arrest on a hot check charge.  Appellant fled Colorado, heading for Texas.  On his way to Texas, he was stopped in Oklahoma and arrested on the Colorado warrant.  Appellant challenged extradition and was released from jail on a $30,000 bond.  He then fled Oklahoma, and an Oklahoma warrant was issued for his arrest.

In Denton, police officers learned of the warrants.  An undercover team planned to corner Appellant when he arrived at Albertson’s for an appointment with a woman.  The officers, dressed variously in sweats and other civilian attire, were driving unmarked cars.  One officer, Officer Padgett, pulled an unmarked car in front of Appellant’s truck while another unmarked car carrying two officers, Officer Jones and Officer Lane, pulled behind Appellant.  Officer Padgett jumped out of the car.  Some evidence showed that he held his badge and gun up as he ran toward the driver’s side of the truck and yelled, “Police— get your hands up.”  One of the officers in the rear car, Officer Jones, ran to the truck’s passenger door.  Evidence in the record showed that Officer Jones banged on the passenger window and also yelled “Police—get your hands up.”  There was also evidence that Officer Jones’s badge and gun were visible.  The other officer in the rear car, Officer Lane, headed for the driver’s-side door of Appellant’s truck.  There is evidence that he also yelled, “Police—get your hands up” at Appellant.  Officer Lane then opened the driver’s-side door.

Appellant, however, was aware that bounty hunters were looking for him.  There is some evidence that he believed the shouting men who had cornered him were bounty hunters and that he believed that they were yelling “bounty hunter,” not police officer.  When Officer Lane opened the door, Appellant put his truck in reverse and floored the accelerator, squealing the tires and hitting the unmarked car behind him.  Officer Lane was hit by the open door but did not fall down.  Appellant then put the truck in drive and headed forward.  Officer Lane grabbed Appellant and pulled him from the truck.  Although Officer Lane and Appellant were no longer in the truck, the truck continued to move forward.  Hoping to stop the truck, Officer Craig, Officer Padgett’s partner who had been monitoring the situation from a distance, fired two shots at the rear tires of the truck.  The officers ultimately arrested Appellant and charged him with aggravated assault of a public servant.

Lesser Included Offense of Deadly Conduct

In his first point, Appellant argues that he was entitled to a jury charge on the lesser included offense of deadly conduct.  A person commits the offense of assault when the person intentionally or knowingly threatens another with imminent bodily injury.
(footnote: 2)  A person commits the offense of aggravated assault if the person commits an assault and uses or exhibits a deadly weapon during a commission of the offense.
(footnote: 3)  Aggravated assault is a second degree felony unless it is committed against a person whom the actor knows to be a public servant in the lawful discharge of an official duty.
(footnote: 4)  Under this circumstance, the offense becomes a first degree felony.
(footnote: 5)
 A person commits the offense of deadly conduct when he recklessly engages in conduct that places another in imminent danger of serious bodily injury.
(footnote: 6)  The offense of deadly conduct is a class A misdemeanor if it is committed without discharging a firearm.
(footnote: 7)
 In determining whether a defendant is entitled to a lesser included offense instruction, the reviewing court must apply a two-pronged test.
(footnote: 8)  The reviewing court must determine (1) whether the lesser offense is included within the proof necessary to establish the charged offense and (2) whether evidence exists in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty of only the lesser included offense.
(footnote: 9)
 The State concedes that deadly conduct is a lesser included offense of aggravated assault.
(footnote: 10)  The State, however, challenges whether there was more than a scintilla of evidence in the record that would permit a rational jury to find that Appellant was guilty only of deadly conduct.

At trial, Appellant’s defense was that he did not realize the casually dressed police officers were peace officers and not bounty hunters.  Despite Appellant’s belief that the peace officers were bounty hunters, there is no evidence that Appellant acted recklessly rather than intentionally or knowingly.  Therefore, a rational jury could not have found that Appellant was guilty only of deadly conduct.

A person acts recklessly with respect to the circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or that the result will occur.
(footnote: 11)  And a person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
(footnote: 12)  A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.
(footnote: 13)  A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
(footnote: 14)
 The record reflects that the door to the truck was open and that Officer Lane was standing beside Appellant.  With Officer Lane standing inside the open doorway, Appellant’s quick acceleration to the rear can only be seen as an intentional attempt to knock Officer Lane to the ground, that is, an attempt to strike him.  We have carefully searched the record, and there is no evidence that Appellant merely acted recklessly.  The record clearly reflects that Appellant intentionally accelerated his truck in reverse knowing that the door would strike Officer Lane.  We overrule Appellant’s first point.

Self Defense

In his second point, Appellant argues that the trial court erred in denying his requested jury charge on self defense.  A person is entitled to an instruction on self defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached, or uncontradicted, and regardless of the credibility of the defense.
(footnote: 15)  The denial of a defendant’s requested instruction is not error, however, when the requested instruction merely denies the existence of an essential element of the State’s case.
(footnote: 16)
 Here, Appellant argues that he was entitled to the self defense instruction because he believed the men who surrounded his truck were bounty hunters, not public servants.  But because Appellant was charged with aggravated assault on a public servant, the State was required to prove that Appellant knew Officer Lane was a public servant.
(footnote: 17)  The jury charge instructed the jury to convict Appellant only if the State had proven, beyond a reasonable doubt, that Appellant intentionally or knowingly threatened Officer Lane and that Appellant knew that Officer Lane was a police officer who was lawfully discharging an official duty.  Therefore, if the jury believed that Appellant did not know Officer Lane was a police officer, it would have acquitted Appellant.  Consequently, Appellant requested a self defense instruction that merely negates an essential element of the State’s case.

Furthermore, self defense does not justify resisting an arrest that the actor knows is being made by a peace officer, even if the arrest is unlawful, unless before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary and the actor reasonably believes the force is immediately necessary to protect himself against the peace officer’s use or attempted use of greater force than necessary.
(footnote: 18)
 Although there is evidence in the record that Appellant believed that the men who surrounded his truck were bounty hunters, our review of the record yields no evidence that Appellant was the victim of an unlawful show of force.
(footnote: 19)  Appellant concedes that there was a warrant for his arrest and that he was lawfully arrested on that warrant.  Because Appellant does not allege that the officers used unlawful force,
(footnote: 20) it is clear that he requested an instruction that merely negates an essential element of the State’s case.  Thus, he is not entitled to a self defense instruction,
(footnote: 21) and the trial court did not err in denying his request for the self defense charge.  We overrule Appellant’s second point.

Compulsory Process

In his third point, Appellant argues that the trial court erred in quashing his subpoenas seeking recordings of telephone calls between Appellant, a third party, and Detective Jeff Davis.  Appellant contended that within days of the arrest, Detective Davis told him in a three-way telephone call between Detective Davis, a third party, and Appellant that he would probably be charged with misdemeanor evading arrest.  Appellant argues that because of an internal investigation, the officers decided instead to charge him with the greater offense of aggravated assault of a peace officer.

Appellant argues that he was denied his Sixth Amendment right to compulsory process and his Fourteenth Amendment right to due process.  Denial of compulsory process is a denial of due process.
(footnote: 22)  The sixth amendment right to compulsory process in a criminal case guarantees compulsory process for obtaining evidence that would be both material and favorable to the defense.
(footnote: 23)  The subpoenas, however, requested recordings of the telephone conversation involving a police officer, Detective Davis, who was not present at the arrest.  The requested evidence was Detective Davis’s opinion of the credibility of the officers who testified they believed Appellant had imminently threatened them with bodily injury.

Although the third party did not testify, Appellant represented that she did not remember the conversation in detail.  Detective Davis, however, testified that he did not tell Appellant that he would be charged with misdemeanor evading arrest.  Furthermore, the record reflects that there was not an internal investigation; there was only a routine investigation that is conducted anytime shots are fired by an officer.  Appellant did not testify concerning this matter.

Arguing that the third party was “unavailable” to testify about the telephone calls between Detective Davis, Appellant, and the third party because the third party did not remember the details of the conversation, Appellant subpoenaed the cell phone records of Detective Davis for the dates February 27th through March 30th.  Appellant also subpoenaed all telephone records, documents, and electronically recorded conversations of telephone calls to or from any of fifteen Denton County Jail telephone numbers during a thirty-day period from both Evercom, the telephone company that provides service to the Denton County Jail, and the Denton County Sheriff’s Office.

At the hearing on both Evercom’s and Denton County Sheriff’s Office’s motions to quash the subpoena, Appellant argued that the three-way calls at issue would have come from three numbers either outgoing from or incoming to Detective Davis’s cell phone.  The trial court conducted an in camera inspection of Detective Davis’s records and announced that none of the three numbers was listed.  Applying an abuse of discretion standard,
(footnote: 24) we find the trial court did not abuse its discretion in quashing Appellant’s subpoenas.  We overrule Appellant’s third point.

Conclusion

Having overruled all Appellant’s points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  September 9, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. Penal Code Ann.
 § 22.01(a)(2)(Vernon Supp. 2004-05).

3:
Id
. § 22.02(a)(2).

4:
Id
. § 22.02(b)(2).

5:
Id
.

6:
Id
. § 22.05(a) (Vernon 2003).

7:
Id
. § 22.05(e).

8:
Lofton v. State
, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001).

9:
Id
.

10:
See Bell v. State
, 693 S.W.2d 434, 437-39 (Tex. Crim. App. 1985).

11:
Tex. Penal Code Ann.
 § 6.03(c) (Vernon 2003).

12:
Id
. § 6.03(a).

13:
Id.
 § 6.03(b).

14:
Id.

15:
Ferrel v. State
, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).

16:
Jester v. State
, 64 S.W.3d 553, 556 (Tex. App.—Texarkana 2001, no pet.); 
Chavers v. State
, 991 S.W.2d 457, 460 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).

17:
See
 
Tex. Penal Code Ann.
 § 22.02(b)(2) (Vernon Supp. 2004-05).

18:
Id
.
 § 9.31(b)(2), (c) (Vernon 2003).

19:
See
 
id
.
 § 9.31(b)(2).

20:
See
 
id
.
 § 9.31(c).

21:
See
 
id
;
 Jester
, 64 S.W.3d at 556; 
Chavers
, 991 S.W.2d at 460.

22:
See Coleman v. State
, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998).

23:
Id
.

24:
Drew v. State
, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987).