Opinion issued June 14, 2007 









Opinion issued June 14, 2007 










 

 

 

 




 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00556-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



TONI HOBSON JACOBS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from County Criminal Court at Law No. 10

Harris County, Texas

Trial Court Cause No. 1344864

 








 



O P I N I O N

 

          Appellant Toni Hobson
Jacobs pleaded not guilty to the Class A misdemeanor offense of possession of a
gambling device.  See Tex. Pen.
Code Ann. § 47.06(a) (Vernon 2003).  A jury found Jacobs guilty and the
trial court assessed punishment at four days’ confinement and a $300 fine.  In
three issues, Jacobs contends (1) the trial court erred in denying her motion
for directed verdict because the State failed to prove that her gambling
business was not located in a private place, (2) the trial court abused its
discretion in denying her motion for new trial because the prosecutor failed to
provide her with exculpatory evidence, and (3) the evidence is legally
insufficient to support her conviction for possession of a gambling device.  We
conclude that the evidence is legally insufficient to support Jacobs’s
conviction for possession of a gambling device because the State did not link
Jacobs to any gambling device.  We therefore reverse and render a judgment of
acquittal.  

Background

The Harris County Sheriff’s
Department received several complaints that a gambling business called “Gone
Shopping” was operating in a shopping center in Crosby, Texas.  The business
sported a small sign that said, “Open,” and a note on the door stated that the business
was a private club and membership was required for entry.  

          Detective O. Muir visited
the business undercover on December 1, 2005 to investigate.  Muir rang the door
buzzer.  An attendant answered and asked if he had a membership card.  When
Muir responded negatively, the attendant asked him how he knew about the
business.  Muir responded that someone told him about the business while he was
playing an “8 liner” at a convenience store.  See generally Jason Johns,
Comment, Win, Lose, or Draw: The Rise of Eight-Liner Video Devices in Texas, 34 Tex. Tech L. Rev. 263 (2003) (explaining eight-liner gambling devices and
gambling businesses in Texas).  Muir obtained a membership card by
giving the attendant his driver’s license.  

The attendant invited Muir to enter
the business.  He sat down at a device called “J&B Mystery.”  Muir inserted
five dollars into the device and received 500 points.  The business matched the
amount that Muir put in the device so he also received an additional 500
points.  While playing the device, Muir discovered that it awarded points in
excess of ten times the amount of his original bet.  Muir tried to leave the
business when he attained 1108 points, but the attendant informed him that he
could not leave until he reached 1500 points because the business had matched
the amount of money he put into the device.  The attendant also told him that
customers say, “ticket out” instead of “cash out,” upon leaving, “just to keep
everything cool.”  Muir continued to play and decided to leave when he reached
1508 points.  The attendant pushed a button on Muir’s device and it dispensed
three tickets.  The attendant then gave Muir fifteen dollars in exchange for
the three tickets.  In a spiral notebook, the attendant documented the date,
the amount she paid Muir, and the device he had been playing.  Muir signed next
to the entry in the notebook.

          Muir returned to Gone
Shopping on December 2, 2005 and used his membership card to enter.  Muir
signed the guestbook and played another J&B Mystery device.  Muir put five
dollars into the device and received 500 points.  Muir ticketed out at 500
points.  On this occasion, the device did not dispense a ticket, but the
attendant handed Muir five dollars in cash.  The attendant wrote down the
information in the notebook and Muir signed his name.  

          Muir visited Gone Shopping
for a third time on December 5, 2005.  Muir inserted five dollars into a “Fruit
Bonus” device and received 500 points.  Muir ticketed out when he reached 504
points.  The attendant gave Muir five dollars and he signed the spiral
notebook.  Muir never observed Jacobs to be present at the business on December
1, 2, or 5.   

          Based on Muir’s undercover
work, Sergeant J. Durbin obtained and executed a search warrant at the business
on December 8, 2005.  The attendant at the door introduced Durbin to Jacobs,
who was identified as the owner of the business and the lessee of its
premises.  The Sheriff’s Department seized $2,665.95 in cash and forty-one
eight-liner devices found on the premises, twenty-eight of which were
operational at the time.  The Sheriff’s Department also issued gambling
citations to the customers present at the business when the warrant was
executed.

Durbin later discovered that the
devices seized on December 8, although similar in type, were not the same
devices that Muir played on December 1, 2, and 5.  Durbin acknowledged that
none of the devices seized on December 8 pay a player in cash.  

Mike Hobson, Jacobs’s ex-husband,
testified that a vendor removed all the gambling devices from Gone Shopping on
December 4 and 5, and that by 8:00 a.m. on December 5, all of the devices were
gone and the premises was “vacant, empty and closed.”  Hobson assisted Jacobs
in setting up new devices that a vendor delivered on December 6 and 7.     

Jacobs testified that she leased the
premises where Gone Shopping was located in September 2005, but had immediately
subleased the premises to a third party.  She also leased the devices seized on
December 8 and produced a lease agreement dated December 6, 2005.  Jacobs
testified that the devices themselves did not dispense tickets or money;
instead, customers could redeem points for prizes.  Jacobs also testified that
her business was a private club and that customers had to have a driver’s
license to become a member.  Jacobs told the customers present at her business
on December 8 that the games were not set up, and provided them with money so
that they could “check out the machines.”       

Wong Vo, a technician for the device
vendor, arrived at the business on December 8 while the Sheriff’s Department
was executing its search warrant.  Vo testified that he delivered the devices to
Jacobs’s business on December 7, and returned to set them up on December 8.  Vo
testified that he planned to set up the devices according to Texas law so that they would not “pay out” more than ten times the original bet.

J. Richard McGoey is an attorney who
leased the devices to Jacobs and testified that Jacobs planned to operate them
in accordance with Texas law.  McGoey also testified that Jacobs planned to
open her business on December 9, 2005.     

Legal Sufficiency

A.  Standard of Review

When evaluating the legal
sufficiency of the evidence, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  The standard is the same for both direct and circumstantial
evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995).  We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses, as this was the function of the trier of
fact.  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is to determine
whether both the explicit and implicit findings of the trier of fact are
rational by viewing all the evidence admitted at trial in the light most favorable
to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson,
819 S.W.2d at 843.

B.  Possession of a Gambling Device

          In her third issue, Jacobs
contends the evidence is legally insufficient to support her conviction for
possession of a gambling device.  

 “A person commits [the
offense of possession of a gambling device] if, with the intent to further
gambling, he knowingly owns, manufactures, transfers, or possesses any gambling
device that he knows is designed for gambling purposes or any equipment that he
knows is designed as a subassembly or essential part of a gambling device.”  Tex. Pen. Code Ann. § 47.06(a).  

“Gambling device” means any electronic,
electromechanical, or mechanical contrivance not excluded under Paragraph (B)
that for a consideration affords the player an opportunity to obtain anything
of value, the award of which is determined solely or partially by chance, even
though accompanied by some skill, whether or not the prize is automatically
paid by the contrivance.  The term:

 

(A) includes, but is not limited to,
gambling device versions of bingo, keno, blackjack, lottery, roulette, video
poker, or similar electronic, electromechanical, or mechanical games, or
facsimiles thereof, that operate by chance or partially so, that as a result of
the play or operation of the game award credits or free games, and that record
the number of free games or credits so awarded and the cancellation or removal
of the free games or credits; and

 

(B) does not include any electronic,
electromechanical, or mechanical contrivance designed, made, and adapted solely
for bona fide amusement purposes if the contrivance rewards the player exclusively
with noncash merchandise prizes, toys, or novelties, or a representation of
value redeemable for those items, that have a wholesale value available from a
single play of the game or device of not more than 10 times the amount charged
to play the game or device once or $5, whichever is less.

 

Id. § 47.01(4) (Vernon
2003).  “‘Thing of value’ means any benefit, but does not include an unrecorded
and immediate right of replay not exchangeable for value.”  Id. § 47.01(9).

Texas Penal Code section 6.03 provides:

(a) A person acts intentionally, or with
intent, with respect to the nature of his conduct or to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause
the result.


(b) A person acts knowingly, or with knowledge, with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.  A person acts
knowingly, or with knowledge, with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause the result.

 

Id. § 6.03(a)–(b) (Vernon
2003).  “‘Possession’ means actual care, custody, control, or management.”  Id. § 1.07(a)(39) (Vernon Supp. 2006). 

C.  Analysis

Viewing the evidence in this case in the light
most favorable to the verdict, a rational trier of fact could not have found
beyond a reasonable doubt that Jacobs, acting with the intent to further gambling,
knowingly possessed a gambling device that she knew was designed for gambling
purposes.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798.  

First, the evidence is legally
insufficient to support Jacobs’s conviction for possession of a gambling device
for the devices seized on December 8, 2005.  The evidence is undisputed that
the devices seized from Jacobs’s business on December 8 were not the same
devices that were present on December 1, 2, or 5.  The record contains no
evidence that the devices seized on December 8 “afford[ed] the player an
opportunity to obtain anything of value . . . .”  Tex. Pen. Code Ann. § 47.01(4).  The devices seized on
December 8 did not pay the player in cash, and by themselves were only capable
of awarding points or, in some cases, tickets.  The devices were therefore not
gambling devices per se.  See id.  To prove that these devices were used as gambling
devices, the State must have produced evidence that the player could exchange the
points or tickets for “anything of value” beyond the parameters of the statute. 
 Id.  “‘Thing of value’ means any benefit,
but does not include an unrecorded and immediate right of replay not
exchangeable for value.”  Id. § 47.01(9).  Here, the State
produced no evidence that a player of these devices could or did exchange
points or tickets for a thing of value.[1]  See, e.g., Hardy v. State, 102
S.W.3d 123, 132 (Tex. 2003) (holding that devices that dispensed tickets that
could be exchanged for cash were gambling devices); Jester v. State, 64
S.W.3d 553, 558–59 (Tex. App.—Texarkana 2001, no pet.) (holding that evidence
was sufficient to support finding that devices were gambling devices). 
The evidence is therefore legally insufficient to support Jacobs’s conviction
for possession of a gambling device for the devices seized on December 8, 2005.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at
798.

Second, the evidence is legally insufficient to
support Jacobs’s conviction for possession of a gambling device for the devices
present at the business on December 1, 2, and 5.[2]  The testimony of Detective Muir is legally
sufficient to prove that the devices present at the business on December 1, 2,
and 5 were gambling devices because Muir testified that he received cash in
exchange for playing the devices.  See Tex.
Pen. Code Ann. § 47.01(4).  However, the only evidence that Jacobs
“possessed” these devices was her testimony that she leased the premises where
Gone Shopping was located in September 2005.[3]  See id.
§1.07(a)(39).  Muir specifically testified that he never placed Jacobs at the
business on December 1, 2, or 5; rather, the unidentified attendant paid him
the cash.

“‘Possession’ means
actual care, custody, control, or management.”  Id.  If an accused does
not exclusively possess the place where the contraband is found, we may not
conclude that the accused had knowledge of and control over the contraband
unless additional independent facts and circumstances affirmatively link the
accused to the contraband.  Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Edwards v. State, 178 S.W.3d 139, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.); see also Rhyne v. State, 620 S.W.2d 599, 601
(Tex. Crim. App. 1981) (“When the accused is not in exclusive possession of the
place where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional
independent facts and circumstances which affirmatively link the accused to the
contraband.”); Campos v. State,
716
S.W.2d 584, 585 (Tex. App.—Corpus Christi
1986, no pet.) (“Typically, exclusive possession of the premises
where the contraband is located is sufficient to establish [that the accused
possessed the contraband].”).  “The ‘affirmative links
rule’ is designed to protect the innocent bystander from conviction based
solely upon his fortuitous proximity to someone else’s [contraband].”  Poindexter,
153 S.W.3d at 406.  While most cases applying the affirmative links rule
involve the unlawful possession of a controlled substance, the rule applies to
cases involving the unlawful possession of other contraband as well.  See,
e.g., Corpus v. State, 30 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (applying affirmative links rule in case
involving unlawful possession of firearm); Gaines
v. State, 874 S.W.2d 733, 735–36
(Tex. App.—Houston [1st Dist.] 1994, no pet.) (applying affirmative links rule
in case involving unlawful possession of firearm); Savery v.
State, 782 S.W.2d 321, 327–28 (Tex. App.—Beaumont 1989, pet. denied) (applying
affirmative links rule in case involving unlawful possession of child
pornography); Young v. State, 752 S.W.2d
137, 140 (Tex. App.—Dallas 1988, pet. ref’d) (applying affirmative links rule
in case involving unlawful possession of firearm).  

Other than Jacobs’s
status as the lessee of the premises where Gone Shopping was located, the State
produced no additional independent facts or circumstances affirmatively linking
Jacobs to the gambling devices.  See Rhyne, 620 S.W.2d at 601–02
(holding that evidence was legally insufficient to support conviction for
possession of controlled substance); see also Poindexter, 153
S.W.3d at 406; Edwards, 178 S.W.3d at 143.  Because the evidence is
undisputed that Jacobs did not exclusively possess the premises where the
gambling devices were located on December 1, 2, and 5, we may not conclude that
Jacobs had knowledge of and control over the devices absent additional evidence
linking Jacobs to the devices.  See Poindexter, 153 S.W.3d at 406;
Rhyne, 620 S.W.2d at 601; Edwards, 178 S.W.3d at 143.  We
therefore hold that the evidence is legally insufficient to support Jacobs’s
conviction for possession of a gambling device for the devices present at the
business on December 1, 2, and 5.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798.

Conclusion

We hold that the evidence is legally
insufficient to support Jacobs’s conviction for possession of a gambling
device.  We therefore reverse the judgment of the trial court and render a
judgment of acquittal.

 

 

                                                                   Jane Bland

                                                                   Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Publish.  Tex. R. App. P. 47.2(b).

 









[1] Jacobs’s testimony that she provided the customers
present at her business on December 8 with money so that they could “check out
the machines” does not constitute evidence that the machines were gambling
devices.  A device does not become a “gambling device” until it “affords the player an opportunity to obtain anything of
value.”  Tex. Pen. Code Ann. §
47.01(4) (Vernon 2003).  Additionally, the fact that the devices seized on
December 8 contained money does not constitute evidence that they were gambling
devices without evidence that they could pay the money to a player, as opposed
to taking money from a player.  Id.            





[2] The information in this case reads:

 

Comes now the undersigned Assistant District Attorney
of Harris County, Texas on behalf of the State of Texas, and presents in and to
the County Criminal Court at Law No. 10 of Harris County, Texas, that in Harris
County, Texas, TONI HOBSON JACOBS, hereafter styled the Defendant,
heretofore on or about DECEMBER 8, 2005, did then and there unlawfully
with intent to further gambling, knowingly POSSESS A GAMBLING DEVICE, namely,
J&B MYSTERY, that he [sic] knows is designed FOR GAMBLING PURPOSES.

 

The State may allege the commission of an offense “on or about” a
certain date, and this allegation allows the State to prove that the offense
occurred on any date that is anterior to the presentment of the information or indictment
and within the statutory limitations period.  See Garcia v. State, 981 S.W.2d
683, 685–86 (Tex. Crim. App. 1998); Sledge v. State, 953 S.W.2d 253, 256
(Tex. Crim. App. 1997). 
The information in this case was therefore sufficient to charge Jacobs with
possession of a gambling device on December 1, 2, and 5.

 





[3] Jacobs also testified that she immediately subleased
the premises to an unidentified third party and did not retake possession until
December 6, 2005.  The jury, however, was entitled to discredit this testimony.  See Evans v. State, 202 S.W.3d 158, 162–63
(Tex. Crim. App. 2006).